NETHERLAND *v.* MEAD CORPORATION.

(*Knoxville*, September Term, 1936.)

Opinion filed November 21, 1936.

Cox, TAYLOR & EPPS, of Johnson City, for complainant.

KELLY, PENN & HUNTER, of Kingsport, for defendant.

MR. JUSTICE DE HAVEN delivered the opinion of the Court.

This is a compensation case brought under the Workmen's Compensation Act of Tennessee. It is averred that the accidental injuries complained of were sustained "on the ——— day of May, 1933," the exact date, as shown in the proof, was May 23, 1933. Suit was brought on April 30, 1935. Defendant, among other defenses, relied on section 6874 of the Code, which is as follows:

"The right to compensation under this chapter shall be forever barred, unless within one year after the accident resulting in injury or death occurred the notice required by the preceding section is given the employer and a claim for compensation under the provisions of this chapter is filed with the tribunal having jurisdiction to hear and determine the matter."

Plaintiff avers that defendant is estopped from relying on the one-year period of limitation set out in the statute, because it knew, or should have known, the nature and extent of his injuries, and did not disclose same to him. He avers in his declaration, in substance, that on May ——, 1933, he was in the employ of defendant at its plant in Kingsport, Tennessee, and worked as a helper on a machine known as a pulp rewinder; that while in the performance of his duties, and while lifting a huge

roll of pulp, he accidentally fractured one of the lumbar vertebrae of his spine, as a result of which he was unable to perform manual labor, and is permanently disabled; that immediately after the accident he was taken to the company's doctor. It is then averred:

"At that time your petitioner was suffering much pain and said doctor told him that he thought it was a strain and that all he could do was to put a piece of adhesive tape on the hip joint, which was done. Said doctor told petitioner that his injuries were not serious; that the taping of the hip was all that was necessary and it wouldn't be necessary for him to lay off from work, provided he didn't have any heavy work to do; in other words, he told petitioner that he was able to do light work in his then disabled condition. Petitioner laid off from work the balance of that day, but the next morning, in obedience to the doctor's instructions, he went back to work on another job which was much lighter work than he had theretofore been doing.

"Thereafter said company doctor retaped petitioner's back or hip, at regular periods of from ten days to two weeks, and always told him that his trouble was just a strain and that he would eventually get over it, but that it would just take a little time. Petitioner had confidence in said doctor and believed and relied upon what he told him, and since that time, and until recently he has believed that his said injuries were not serious and that he would recover, as said doctor informed him, notwithstanding his said back has been troubling him and disabling him more or less all the time since the date of said accident. He continued to work for said defendant on

light work, however, until March, 1934, when he was laid off.''

It was further averred, in substance, that he was advised and treated by the company's doctor up until the time he was laid off in March, 1934; that ''recently, and within the last few days, his doctor in Johnson City advised him to have an X-ray made of his back, which he did, and said X-ray shows a fractured lumbar vertebra, which he is advised resulted from said accidental injury, as aforesaid, and permanently and totally disables him from the performance of manual labor.'' It is then averred:

''. . . He did not make claim for compensation sooner, for the reason that he was not advised of his rights and did not know his rights and condition; he thought his injuries were trivial and did not believe they were serious. Defendant's doctor so informed him, as aforesaid, and in this way he was misled and misinformed and improperly advised by the defendant's agents and representatives.''

It is further averred, in substance, that from the time of the accident to the time he was laid off petitioner had put himself in the hands of the defendant and its doctor for examination, observation and treatment; that they examined and treated him during that time, ''but did not make or cause to be made any X-ray examination.'' It is then further averred:

''. . . And petitioner avers that if the doctors, agents and representatives of the defendant had made proper examination to ascertain his physical condition by X-ray, this condition would have been discovered at the

time. They knew, or should have known, his true condition, and did not disclose same to him.''

The chancellor found that plaintiff was accidentally injured, in the course of his employment, on May 23, 1933, and was sent to Dr. W. H. Reed, the company's regular doctor; that ''from the symptoms given him by petitioner Dr. Reed was of the opinion that petitioner's injury was merely a wrench or strain of the back, of a minor nature, and advised him that he could go back to work at a lighter job, and that he would soon be all right;'' that petitioner was assigned a lighter job and continued to work until April 6, 1934, when he was laid off with a number of others; that the only treatment given by Dr. Reed was to place some adhesive tape on petitioner's back, and this same treatment was repeated on one or more subsequent occasions; that Doctors Reed and Tipton are partners in the practice of medicine, and ''Doctor Tipton says that, out of a possible two thousand cases complaining of strained back, substantially the same treatment was given petitioner as given to all of the others and that in no case was an X-ray suggested or resorted to;'' that Dr. Reed says petitioner came to him complaining of a strained back, and he examined him and was of the opinion that there was nothing more than a strain; that he taped petitioner's back and advised him to do lighter work until he got better, and thought he would be all right within a few days; that Dr. Reed says he did all that seemed required from the symptoms complained of; that Dr. Reed says petitioner came to him only twice for treatment, May 23 and May 29, and his records show only two visits and he was paid for only two visits; that petitioner thinks he went to Dr. Reed more than twice.

"Anyway, it is not established that he went more than just a few times, but continued his work for some months after the last visit. And the record discloses that within two or three months after the injury petitioner went to his family physician, Dr. J. G. Moss, of Johnson City, who examined him and advised rest and the use of hot applications. Dr. Moss strapped petitioner's back as Dr. Reed had done, but he did not suggest an X-ray of the back. . . .

"After petitioner ceased working for defendant he took other work and consulted other doctors and he failed to bring suit for another year and long after his right had been barred by the statute of limitations. . . .

"There is no proof that Dr. Reed knew of petitioner's condition. It cannot be said that he acted fraudulently or for that matter negligently."

The chancellor sustained defendant's plea of the statute of limitations and dismissed the suit. Petitioner has appealed to this court and by assignments of error says, in substance, that the chancellor erred (1) in failing to hold that defendant, under the facts of the cause, is estopped from relying on the statute of limitations as a bar to petitioner's cause of action, and in sustaining the plea of the statute of limitations; (2) that the chancellor erred in holding that Dr. Reed "was of the opinion" that petitioner's injury was merely a strain of the back, but should have held that Dr. Reed did not undertake to state his opinion and definitely diagnosed petitioner's condition as that of a strained back of a minor nature; (3) that the chancellor should have held Dr. Reed assumed the responsibility of examining and diagnosing petitioner's condition, and undertook to and did definitely ad-

vise him that he had only a strained back, or sacroiliac strain, which was trivial.

The assignments of error broadly raise the question of the application of the one-year statute of limitations under the facts of the cause.

The position of plaintiff is that Dr. Reed did not give it as his opinion that plaintiff was suffering from a strained back, but that he definitely stated such to be a fact. It is averred in the declaration, which is sworn to, that when plaintiff went to Dr. Reed "said doctor told him that he thought it was a strain." Plaintiff is bound by this averment. It appears from the record that plaintiff went to Dr. Reed and complained of a strained right side, in the lumbar region; that Dr. Reed took the history of the case and questioned plaintiff as to how the accident occurred, and was told that he was lifting pulp and strained his side; that a physical examination was made of plaintiff's back and all symptoms of the trouble were subjective. From the history of the case and the symptoms found on examination, Dr. Reed's diagnosis was a strained back. He did not consider an X-ray necessary.

The record discloses that Dr. Reed is a physician and surgeon of twenty-three years' experience, and has treated backs since he commenced to practice. The fact that Dr. Reed is a physician of high standing is not questioned in the record. There is nothing in the record to show that Dr. Reed knew plaintiff had a fracture of the lumbar vertebrae, or that he acted in bad faith, or fraudulently, in making the diagnosis, or in advising plaintiff. Furthermore, there is nothing to show that defendant prevented plaintiff from seeking medical advice and treatment elsewhere. In fact, he did go to Dr. Ross with-

in two or three months of the accident and asked that his back be strapped up. Dr. Ross says he examined the back, "and that, of course, revealed nothing." He ordered no X-ray. Plaintiff did not have an X-ray made of his back until within a week or ten days before the institution of this suit, more than a year after the termination of his employment by defendant.

There is an absence of an allegation in the declaration that defendant knew of and purposely concealed the facts with respect to the nature and extent of plaintiff's injuries. Hence, there is nothing to take the case out of the bar of the statute. In *Bodne* v. *Austin*, 156 Tenn., 353, 2 S. W. (2d), 100, 103, it was insisted that the plaintiff in error was kept in ignorance of the wrong, and that the statute did not run until its discovery. The court said: "We do not find that the allegations of the declaration bring the case within the rule invoked, in that it is not alleged that the defendant knew of, and purposely concealed, the facts. Fraudulent concealment, essential to this theory, is not therefore shown." See, also, *M. Bodne* v. *Austin*, 156 Tenn., 366, 2 S. W. (2d), 104, and *Hudson* v. *Shoulders*, 164 Tenn., 70, 45 S. W. (2d), 1072. In *Albert* v. *Sherman*, 167 Tenn., 133, 67 S. W. (2d), 140, it was held that an averment in the declaration that the defendant knew, or by the exercise of reasonable care should have known, that the root of plaintiff's tooth was left in his gum does not make out a fraudulent concealment of a cause of action.

There is material evidence in the record sustaining the findings of the chancellor that defendant did not act fraudulently or negligently with respect to the medical treatment given plaintiff. Both on the pleadings

and on the facts as found by the chancellor, we are constrained to hold that plaintiff's cause of action was barred by the statute, and no estoppel operated against defendant from relying thereon. The decree of the chancellor must, therefore, be affirmed.