# WILLIAM G. HALL v. RICHARD L. DE SAUSSURE.
## —297 S. W. (2d) 81.

Western Section. June 21, 1956.

Petition for Certiorari denied by Supreme Court, October 5, 1956.

Rehearing denied on Certiorari December 7, 1956.
See 297 S. W. (2d) 90.

574

Wils Davis and L. E. Gwinn, Memphis, for plaintiff.

John S. Porter, Burch, Porter & Johnson, Memphis, for defendant.

BEJACH, J. This cause involves a suit by William G. Hall, deceased, which has been revived in the name of his widow and executrix, Mrs. Janice C. Hall, against Dr. Richard L. DeSaussure, a neuro-surgeon, for damages for performing an operation upon the spine of William G. Hall, deceased, which defendant, Dr. DeSaussure, had not been authorized to perform, and which it is claimed that he expressly agreed not to perform. The main question involved in the cause, as same is presented in this court, is whether or not the suit is barred by the statutes of limitation of one year. There is one other question presented by the appeal which involves the ruling of the trial judge on the admissibility of certain evidence. It is conceded by plaintiff, the appellant in this court, that the suit was filed more than one year after the operation was performed, and that the one year statute of limitation is, in general, applicable to this character of lawsuits. It is contended, however, that the statute of limitations in question was tolled by fraudulent concealment on the part of the defendant, Dr. DeSaussure, of the nature of the operation which he had performed on plaintiff's spine, so that plaintiff did not discover the character of that operation until after the expiration of more than one year from the time the

operation was performed. The suit was brought, as stated above, by William G. Hall during his lifetime, and within less than a year after he discovered that a portion of his spinal column had been removed.

For convenience, the parties will be styled as in the lower court, plaintiff and defendant, or referred to by their respective names.

The declaration filed in this cause is in two counts. The first count alleges that plaintiff was suffering great physical pain, which crossed the left clavicle, traveled down through the shoulder and left arm and to the left hand, as well as laterally across the left chest, and that plaintiff was referred to the defendant to get his advice about what could be done to relieve this pain. Plaintiff was advised by defendant that he should have a rhizotomy performed, which operation, defendant assured plaintiff was a very simple operation, consisting of a clipping or severance of the nerves leading through the pain area, by making an incision on the left side of the spine, parallel with same and approximately an inch to an inch and a half therefrom, the operation to be performed under a local anesthetic. This count of the declaration further alleges that plaintiff emphatically stated to defendant that if the operation involved surgery upon plaintiff's spinal column, he would not consider it nor allow it under any circumstances; and that defendant assured plaintiff that he would not enter the spinal column in performing the operation, but that same would be performed outside of the spinal column. It was further alleged that in response to an inquiry from plaintiff as to the effect upon his arm and hand, he was assured by defendant that there would be no loss of use, except for the loss of muscle

tone, which would be negligible, and that the only uncomfortable result of the operation would be a deadening of sensation in the little finger, the ring finger, and the middle finger of the left hand. The declaration further alleges that upon the assurance of defendant that no spinal surgery would be performed, plaintiff entered into a contract with defendant to perform the operation above described and no other; and that thereafter on September 8, 1952, plaintiff, pursuant to said contract, submitted to an operation at the hands of defendant; that subsequent to the operation, plaintiff continued to suffer excruciating pain, and that this pain became so intolerable that he was forced to resort to the use of codeine in heavy quantities; that he lost the use of his shoulder and arm; and that in an effort to obtain relief, he consulted an orthopedic specialist, who made X-ray pictures which showed that the operation performed by defendant was not the operation authorized by plaintiff, but was an operation in violation of his agreement with defendant,—the operation actually performed being an operation upon the spine. The declaration further alleges that the operation performed by defendant, consisted of the removal of a portion of the sixth, seventh, and eighth cervical vertebra, a part of the first thoracic vertebra, and a portion of the disc on the left side, separating said vertebra, together with the clipping of nerves in the spinal column, all in violation of the express agreement between plaintiff and defendant.

The first count of the declaration alleges further that although the defendant had full knowledge of the manner and extent of the said operation, he wrongfully, purposefully, and fraudulently concealed from plaintiff that he had performed an operation contrary to the contract.

Count two of the declaration alleges, in substance that the operation performed by defendant upon plaintiff was an unlawful assault and battery resulting in the injuries alleged in the first count; and that this operation was performed September 8, 1952, contrary to the agreement between plaintiff and defendant.

The defendant filed a plea of not guilty, and also, a special plea that plaintiff's action was not brought within one year after the cause of action accrued. Defendant later filed an additional plea stating that the rhizotomy was performed Sept. 8, 1952, with the consent and approval of the deceased, William G. Hall.

Plaintiff filed a replication which alleged that the defendant fraudulently concealed from the plaintiff the nature of the operation, and defendant's breach of his contract with plaintiff, and that the suit was brought within less than one year after the plaintiff's discovery of the breach of contract by defendant, consisting of the performance of an illegal and unauthorized operation.

A rejoinder was filed by the defendant.

The cause was tried before the court and a jury. At the conclusion of plaintiff's proof, the trial judge sustained defendant's motion for a directed verdict, on the ground that the cause of action was barred by the one year statute of limitations. A motion for a new trial was seasonably filed and exceptions taken to the action of the trial court in overruling same. An appeal in the nature of a writ of error was prayed, granted, and duly perfected, and assignments of error were filed in this court which raise the questions to be decided here. In addition to the question of whether or not the cause should have been submitted to the jury, the assignments of error filed

in this court raise one additional question, viz., whether or not the trial judge erred in excluding certain testimony of Mrs. Janice C. Hall, which testimony was heard by the judge in the absence of the jury and is preserved in the bill of exceptions.

In determining the question of whether or not the cause should have been submitted to the jury, this court must, of course, take the view of the evidence most favorable to plaintiff's contentions, drawing all legitimate inferences from the facts tending to support plaintiff's cause of action. Prudential Ins. Co. of America v. Davis, 18 Tenn. App. 413, 429, 78 S. W. (2d) 358, 368; Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984; Tennessee Cent. R. Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931; Tyrus v. Kansas City, Ft. S. & M. R. Co., 114 Tenn. 579, 86 S. W. 1074; Smith v. Sloan, 189 Tenn. 368, 225 S. W. (2d) 539, 227 S. W. (2d) 2; Chapman v. Evans, 37 Tenn, App. 166, 168, 261 S. W. (2d) 132; Good v. Tennessee Coach Co., 30 Tenn. App. 575, 209 S. W. (2d) 41; Jarratt v. Clinton, 34 Tenn. App. 670, 241 S. W. (2d) 941.

The testimony offered in support of plaintiff's declaration consisted of the deposition of William G. Hall, deceased, taken a few days before his death, the deposition of Dr. J. J. Weems, and the oral examination of Mrs. Janice C. Hall, and of Mr. William M. Hall, father of William G. Hall, deceased. We deem it unnecessary to quote the testimony in detail, except as to that portion of same involved in connection with the assignment of error questioning the exclusion of certain testimony of Mrs. Janice C. Hall. From the testimony offered by plaintiff, the following facts appear.

Plaintiff, William G. Hall, during his lifetime first consulted defendant in defendant's office where he informed him that he did not wish to have anything done to his spine; that he had a horror of that type of operation because of his fear that it would paralyze him; and that he wanted it understood that if any operation was to be performed on his spinal column, he would not have the operation. Neither William G. Hall, deceased, nor Mrs. Janice C. Hall who as Executrix has been substituted as plaintiff in his stead, had ever heard of a rhizotomy; and it was explained to them by defendant that it consisted of a clipping of the ends of certain nerves; and in response to an inquiry, defendant assured Mr. and Mrs. Hall that the only effect of the operation would be a deadening of the little finger, and to a certain extent, the ring finger and middle finger. Defendant also assured Mr. and Mrs. Hall that the spinal column would not be invaded, that the nerves in question would be clipped about an inch or an inch and a quarter from the spinal column.

Following the operation, William G. Hall lost the use of his shoulder and arm to such an extent that when he was on his back he could not get up without assistance. He claims that the first knowledge he had that defendant had violated his agreement and had operated on his spinal column, was November 9, 1953, when he consulted Dr. J. J. Weems, who took an X-ray picture which showed that the spine had been invaded. At the time of the first examination of the X-ray picture taken by Dr. Weems, in the presence of Mr. and Mrs. Hall, he made the remark, ''He sure took a chunk out of your spine.'' This testimony was excluded by the trial judge, but is

preserved in the record and is the basis of one of the assignments of error.

■■ The law is settled in Tennessee to the effect that the statute of limitations of one year applies to actions for personal injuries, regardless of whether the action sounds in tort or in contract. Bodne v. Austin, 156 Tenn. 353, 2 S. W. (2d) 100, 62 A. L. R. 1410, 1940— Lim. of Act. 31, 104(1). It is also the law in Tennessee that mere ignorance and failure of the plaintiff to discover the existence of a cause of action will not prevent the running of the statute of limitations. Bodne v. Austin, 156 Tenn. 366, 2 S. W. (2d) 104; Albert v. Sherman, 167 Tenn. 133, 67 S. W. (2d) 140; Brown v. Tennessee Consol. Coal Co., 19 Tenn. App. 123, 83 S. W. (2d) 568; Netherland v. Mead Corp., 170 Tenn. 520, 98 S. W. (2d) 76.

There is an exception to this latter rule, however, where the cause of action has been fraudulently concealed by the party responsible for same. Haynie v. Hall's Ex'r, 24 Tenn. 290, 42 Am. Dec. 427; Whaley v. Catlett, 103 Tenn. 347, 53 S. W. 131; Hudson v. Shoulders, 164 Tenn. 70, 45 S. W. (2d) 1072. In the instant case, while this exception is recognized, it is contended on behalf of defendant that fraudulent concealment of a cause of action which bars the running of the statute of limitations must consist of the employment of some artifice planned to prevent inquiry or to escape investigation and mislead or hinder acquirement of information disclosing a right of action. For this proposition, defendant's brief cites Haynie v. Hall's Ex'r, 24 Tenn. 290, 42 Am. Dec. 427; Patten v. Standard Oil Co. of Louisiana, 165 Tenn. 438, 55 S. W. (2d) 759; Hudson v. Shoulders, 164 Tenn. 70, 45 S. W.

(2d) 1072, and De Haan v. Winter, 258 Mich. 293, 241 N. W. 923; 144 A. L. R. 220, and cases there cited. It is also contended by defendant that a leakage of spinal fluid a few days after the operation charged plaintiff with knowledge that his spine had been entered.

Plaintiff, in turn, while conceding the soundness of the above stated proposition as a general rule, contends that there is an exception to same where there is a confidential or fiduciary relationship between the plaintiff and the defendant whom it is alleged has fraudulently concealed the cause of action, in which case failure to speak where there is a duty to speak is the equivalent of some positive act or artifice planned to prevent inquiry or escape investigation. For this proposition, plaintiff's brief cites Bates v. Preble, 151 U. S. 149, 151, 14 S. Ct. 277, 38 L. Ed. 106; Hudson v. Moore, 239 Ala. 130, 194 So. 147; Herndon v. Lewis, Tenn. Ch. App., 36 S. W. 953; Hudson v. Shoulders, 164 Tenn. 70, 45 S. W. (2d) 1072; Stetson v. French, 321 Mass. 195, 72 N. E. (2d) 410, 173 A. L. R. 569, and annotation to that case in 173 A. L. R. beginning at page 576.

The rule of law applicable to the relationship between physician and patient is stated in American Jurisprudence, as follows:

"The physician naturally is in a position of trust and confidence as regards the patient, and his opportunities to influence the patient are unusual. Hence all transactions between physician and patient are closely scrutinized by the courts, which must be assured of the fairness of those dealings." 41 Am. Jur.—Physicians and Surgeons, Sec. 74, p. 196.

In the instant case, aside from the relationship of physician and patient which existed between Dr. DeSaussure and William G. Hall, deceased, there is in the record of this case, testimony of Mrs. Janice C. Hall which tends to show affirmatively that Dr. DeSaussure deliberately and intentionally concealed from his patient the facts which are material to this lawsuit. This testimony is as follows:

"Q. For what length of time did your husband stay in the hospital? A. After the operation, two weeks as I recall.

"The Court: How long? A. Two weeks.

"Q. Did he (referring to Dr. DeSaussure) say anything to your husband about the operation to the effect that he had clipped the nerve? A. No, sir, he did not. He said—Wait a minute—Yes, he said he clipped the nerves.

"Q. Did he tell your husband how he had clipped them? A. No, sir, he did not.

"Q. Were you present at all times when he visited your husband after that time? A. Yes, sir, I was."

■■ This bit of testimony is, of course, relatively slight, and should not be treated as conclusive of the issues involved. Bearing in mind, however, that in ruling on a motion for directed verdict, all proper inferences should be indulged in as favoring the plaintiff rather than the defendant, we think it was sufficient to have warranted submission of this cause to the jury. Certainly, when Dr. DeSaussure made the specific statement to his patient, William G. Hall, that he had clipped the nerves, Hall had a right to assume that the nerves in

question had been clipped in the manner agreed on before the operation was performed; and failure on the part of Dr. DeSaussure to then and there advise his patient that the program agreed on and authorized had been departed from, was sufficient to have warranted the jury in finding as a fact that Dr. DeSaussure fraudulently concealed his misfeasance. Also, we think that the fact that spinal fluid leaked from the incision a few days after the operation did not charge Mr. or Mrs. Hall with knowledge that his spine had been entered in violation of the agreement made at the time the operation was authorized.

The question of fraudulent concealment as a bar to the running of the statute of limitations, has been discussed in a number of Tennessee cases. In Patten v. Standard Oil Co. of Louisiana, 165 Tenn. 438, 55 S. W. (2d) 759, 761, which was a suit for damages resulting in the death of plaintiff's husband, caused by an airplane crash which it was alleged had been caused by the sale of defective gasoline by defendant, the Supreme Court quoting with approval from 12 Ruling Case Law, said:

"In 12 Ruling Case Law, page 306, it is said:

'As a general rule to constitute fraud by concealment or suppression of the truth there must be something more than mere silence, or a mere failure to disclose known facts. There must be a concealment, and the silence must amount to fraud. Concealment in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention. The term generally infers, also, that the person is in some way called upon to make a disclosure. It may be said, therefore, that, in addition to failure to disclose

known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else that there must be a legal or equitable duty resting on the party knowing such facts to disclose them.' '' Patten v. Standard Oil Co. of Louisiana, 165 Tenn. 438, 443, 55 S. W. (2d) 759.

The Patten case was before the Supreme Court on an appeal from a judgment of the Circuit Court sustaining a demurrer to plaintiff's declaration, and the judgment of the lower court was affirmed mainly on the ground that the defendant owed no duty to plaintiff or her husband with reference to concealment of the facts about the defective gasoline. In Bodne v. Austin, 156 Tenn. 366, 2 S. W. (2d) 104, 105, which was a companion case to Bodne v. Austin, 156 Tenn. 353, at page 370, 2 S. W. (2d) 100, 62 A. L. R. 1410, the Supreme Court speaking through Mr. Justice Swiggart, said:

"In Whaley v. Catlett, 103 Tenn. 347, 356, 53 S. W. 131, 134, it was said that 'Fraudulent concealment of the cause of action will prevent the running of the statute.'

"However, the declaration in the present case fails either to aver that concealment of the cause of the illness of plaintiff's wife was fraudulent on the part of the defendant, or that the existence of this cause was known to the defendant. The averment that the failure to disclose the breach of duty was careless and negligent implies a lack of knowledge on the part of the defendant rather than otherwise. Certainly we would not be justified in assuming fraud in order to prevent the running of the statute of limitations."

In Albert v. Sherman, 167 Tenn. 133, 136, 67 S. W. (2d) 140, 141, the statute of limitations was held to have run because:

"The declaration here does allege that the defendant knew or by the exercise of reasonable care should have known, that the root of plaintiff's tooth was left in his gum. Such averment under Bodne v. Austin (the husband's case), does not make out a fraudulent concealment of a cause of action. It was said in that case: 'The averment that the failure to disclose the breach of duty was careless and negligent implies a lack of knowledge on the part of defendant rather than otherwise. Certainly we would not be justified in assuming fraud in order to prevent the running of the statute of limitations.'"

Hudson v. Shoulders, 164 Tenn. 70, 45 S. W. (2d) 1072, was a case which was also before the Supreme Court on appeal from a judgment of the trial court sustaining a demurrer to the declaration. In this case, the declaration positively and specifically charged fraudulent concealment by the defendant as a ground for tolling the statute of limitations, and the Supreme Court reversed the judgment of the lower court and remanded the cause. In this case, the Supreme Court, speaking through Mr. Justice Chambliss, said:

"It is insisted, first, that fraudulent concealment of a cause or ground of action will suspend the running of the statute, and this general proposition is well settled. In the late case of Bodne v. Austin, 156 Tenn. [353] 365, 2 S. W. (2d) 100, 62 A. L. R. 1410, this court recognized this rule, but held that it had

no application in the absence of an allegation that the cause of action was known to the defendant and fraudulently concealed by him. It was therein said that mere ignorance and failure of the plaintiff to discover the existence of the cause of action within the statutory limitation would not prevent the running of the statute. Nothing in the opinion in that case, or in our other cases, extends the rule to a case where the plaintiff either knew, or neglectfully failed to discover, his cause of action, that is, the infliction on him of actionable injury, within the statutory period.

\*　　\*　　\*　　\*　　\*　　\*

"This issue is close on this record. He admits that he discovered that his skin was 'burned and blistered.' This would seem to have put him on notice. But his claim is that upon discovering this condition, the injurious effect or consequences of which he as a lay patient did not know and could not be charged with knowledge of, he promptly inquired of his physicians touching it, and was assured by them, despite their knowledge as professional men to the contrary, that this condition was in effect a mere incident of the treatment without serious or permanent injurious effects, and that he was thus lulled into ignorant security, and so kept until after the running of the statute.

"\* \* \* That case is to be distinguished from this on the facts, in that therein the burn or wound appears to have been more evidently injurious than appears from the allegations in the instant case; so that the plaintiff there was more clearly put on notice at the

time of the actionable wrong that had been committed on him.

\* \* \* \* \* \*

"Giving application to the rule that demurrers are not favored, we are not of opinion that the plaintiff, on the facts here alleged, should be charged with negligence in failing to discover at the time, despite the positive assurances and representations of his trusted physicians, who are definitely charged with knowing misrepresentation of the facts, that he had suffered actionable injury." Hudson v. Shoulders, 164 Tenn. 70-72, 72-73, 73, 74, 45 S. W. (2d) 1072.

In the instant case which is before us on appeal from a ruling from the trial judge sustaining defendant's motion for a directed verdict, rather than on demurrer, as was the case of Hudson v. Shoulders, in our opinion, the same rule of construction is applicable, viz., that all fair inferences should be indulged in favor of the plaintiff rather than in favor of the defendant; and taking into consideration the testimony of Mrs. Janice C. Hall, quoted above, we are of opinion that the learned trial judge was in error when he sustained defendant's motion for a directed verdict. Certainly, the defendant had, and plaintiff's declaration charges him with having had, actual knowledge of the character of the operation which he had performed and which it is claimed he fraudulently concealed. The assignments of error questioning this action of the trial judge must therefore be sustained.

The result which we have reached in this opinion is, we believe, in harmony with well reasoned decisions of other jurisdictions.

In Bates v. Preble, 151 U. S. 149, 151, at pages 160-161, 14 S. Ct. 277, at page 280, 38 L. Ed. 106, the Supreme Court of the United States, speaking through Mr. Justice Brown, said:

"On the other hand, if the fraud be secret in its nature, and such that its existence cannot be readily ascertained, or if there be fiduciary relations between the parties, there need be no evidence of a fraudulent concealment other than that implied from the transaction itself."

In Hudson v. Moore, 239 Ala. 130, 194 So. 147, at page 149 of the Southern Reporter text, the Supreme Court of Alabama, speaking through Bouldin, J., said:

"Where confidential relations exist, as between physician and patient, the duty to disclose may render silence fraudulent, but knowledge of the facts is a necessary element of fraudulent concealment."

From the annotation to Hotelling v. Walther, Or. 1942, 130 P. (2d) 944, 144 A. L. R. 205, at page 220 of the A. L. R. annotation, we quote:

"It is well settled that actual knowledge on the part of the physician or dentist of the fact of the wrong done to the patient is an essential element of a fraudulent concealment of a cause of action for malpractice. So holding are the following cases subsequent to those treated in the earlier annotation. Pickett v. Aglinsky, 4 Cir., 1940, 110 F. (2d) 628 (applying West Virginia law); Hudson v. Moore, 1940, 239 Ala. 130, 194 So. 147; Silvertooth v. Shallenberger, 1934, 49 Ga. App. 133, 174 S. E. 365; Carter v. Harlan Hospital Asso., 1936, 165 Ky. 452,

97 S. W. (2d) 9; Maloney v. Brackett, 1931, 275 Mass. 479, 176 N. E. 604; Albert v. Sherman, 1934, 167 Tenn. 133, 67 S. W. (2d) 140; Carroll v. Denton, 1942, 138 Tex. 145, 157 S. W. (2d) 878.''

We take up next the assignment of error that ''The court erred in excluding, over the objection of plaintiff, testimony that Dr. Weems, when he examined X-ray pictures made by him of plaintiff's spine about nine months after the operation, exclaimed to plaintiff, 'He certainly did take a big chunk out of your spine.' (Tr. 74-76). This was error because the spontaneous exclamation of Dr. Weems, on looking at the X-Ray pictures, was a part of the *res gestae* of his examination, and therefore admissible in evidence.''

We think the learned trial judge erred in excluding this testimony and that same should have been admitted as part of the *res gestae* and, consequently, that the assignment of error quoted above should be sustained. In National Life & Accident Insurance Co. v. Follett, 168 Tenn. 647, 80 S. W. (2d) 92, 98, the Supreme Court, speaking through Mr. Chief Justice Green, said:

''It is next urged on behalf of defendant insurance company that the Court of Appeals erred in approving the ruling of the chancellor admitting the testimony of Mrs. Follett as to the statements made to her by her husband as to his falling and striking his stomach against the car. This evidence was admitted as part of the *res gestae,* and under later decisions of this court we think was competent.

''It will be recalled that the garage was only fifteen or twenty feet from the Follett house, and that, according to his wife's testimony, Follett was out

at the garage only about ten minutes before he returned in the condition she described. She said that he was in agony, his face pallid, large beads of perspiration exuding, that he was faltering in his step and holding the pit of his stomach. Under such circumstances, Follett stated that he had fallen against the car, struck himself in the pit of the stomach, and that he was knocked out. It also appears that he was nauseated, and a protracted vomiting spell immediately began.

"While at the garage, Follett had gotten the car out, removed a flat tire, taken the spare tire off the carrier and had put the flat tire on the carrier. These operations must have consumed several minutes and, if he was out only about ten minutes, his return to the kitchen and his statement to his wife must have been made almost immediately after his fall. Naturally, too, after sustaining so painful a fall, Follett would have at once gone back into the house; so that his fall and his statement must have been substantially contemporaneous.

"In Garrison v. State, 163 Tenn. 108, 40 S. W. (2d) 1009, 1011, statements of a defendant in a homicide case, after he had walked some forty feet away from the scene of the shooting, were held admissible as part of the *res gestae.* The court reviewed our previous decisions and noted the difficulty that frequently arises in the application of *res gestae* rules to the facts of particular cases. The court reaffirmed the proposition that to be admissible as part of the *res gestae* the act or declaration * * * must spontaneously spring out of it, and must tend to illustrate, elucidate, or characterize it. But the court quoted

and adopted the following from 16 Corpus Juris, 573:

" 'However, the word "contemporaneous" as employed in the rule, is not to be taken in its strict meaning, nor is time the only criterion for determining whether a thing said or done is part of a given transaction, although closeness in point of time is an element for consideration; the ultimate test is spontaneity and logical relation to the main event, and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstance and at a time so near it as to preclude the idea of deliberation and fabrication, it is to be regarded as contemporaneous within the rule.' Garrison v. State, supra.

"While some other matters were discussed, the principal reason as disclosed in Garrison v. State for admitting the evidence in question was the apparent spontaneity of the statement of defendant. All the cases stress the importance of this element. Such statements to be competent must not suggest fabrication, calculation, or design." National Life & Acc. Ins. Co. v. Follett, 168 Tenn. 647, 663-665, 80 S. W. (2d) 92.

For the reasons herein above stated, we think this cause must be reversed and remanded to the Circuit Court of Shelby. County for a new trial to be held in conformity with this opinion. The costs of the appeal will be paid by the defendant, Dr. Richard L. DeSaussure. The costs of the Circuit Court will await the outcome of the litigation.

Avery, P. J. (W. S.), and Carney, J., concur.