# IN THE COURT OF APPEALS OF TENNESSEE

## EASTERN SECTION AT KNOXVILLE

FILED

**June 9, 1997**

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| PACIFIC PROPERTIES, | ) | SEVIER CIRCUIT |
| Plaintiff/Appellee | ) | NO. 03A01-9701-CV-00020 |
| v. | ) | HON. WILLIAM R. HOLT, JR. |
| | ) | JUDGE |
| HOME FEDERAL BANK OF TENNESSEE, | ) | |
| Defendant/Appellant | ) | |
| v. | ) | |
| MICHAEL S. STALCUP, | ) | |
| Third-Party Defendant | ) | AFFIRMED |

W. W. Davis, Jr., Knoxville, for Appellant.
John B. Waters, III, Knoxville, for Appellee.

## O P I N I O N

INMAN, Senior Judge

This action for conversion was submitted to a jury which returned a general verdict for the plaintiff, thereby implicitly finding that the fact-driven principal defense of the Statute of Limitations was not well-taken. Home Federal appeals and presents for review issues which, as paraphrased, question the propriety of the submission of the case to the jury, whether the defense of Statute of Limitations was well-taken, as a matter of law, whether requested jury instructions should have been given and whether the drawer of a check adequately instructed the drawee Bank as to its disposition.

Pacific Properties [Pacific] is a California general partnership created in 1969. Its principals are Edmund S. Wilkinson and his daughter, Chris Wilkinson. It has multi-state investments in real estate, generally utilizing the limited partnership concept.

In 1987, Wilkinson and his brother-in-law, Stalcup, who was a resident of Tennessee, agreed to form a limited partnership under the style of Wilkinson Properties, Ltd. In the Certificate of Limited Partnership dated February 1, 1988, Stalcup was named the General Partner with Pacific as the limited partner. Pacific was to receive all net distributions until it recouped its entire investment with interest; thereafter, the profits were to be divided equally. The stated purpose of Wilkinson Properties, Ltd. was the ownership and rental of vacation chalets in Sevier County, Tennessee.

Pacific loaned the limited partnership $21,000.00 to purchase a building lot in Gatlinburg, and about one month later made an additional loan of $79,000.00 to enable the partnership to purchase acreage in Pittman Center, Sevier County. Construction funds were required, and Wilkinson and Stalcup met with officers of Home Federal to discuss the financing of the proposed chalets.

Wilkinson believed that a deposit-relationship with Home Federal would establish a banking relationship and facilitate the loan process. Ten days before the meeting with Home Federal officials, he drew a check on Pacific, dated May 13, 1988, for the amount of $100,000.00 payable to Home Federal with an accompanying voucher which read:

> "to purchase $100,000.00 CD to be pledged to construction loans for Wilkinson Properties, Gatlinburg rentals."

This voucher[1] was removed by Wilkinson before the check was delivered to Home Federal. The check alone was handed to Stalcup by Wilkinson with instructions to deliver it to Home Federal, whose officials were not instructed concerning the purpose of the funds.

Wilkinson testified that an official of Home Federal, Steve Jones, told him that "if we move the CD back here [from a California bank] and established a CD at Home Federal, they would definitely make us a construction loan."

---

[1]Scant proof was offered about this voucher, and the parties do not accord it much significance or attention.

On May 26, 1988 Stalcup deposited the check with Home Federal into a $100,000.00 "CD account"[2] in the name of Wilkinson Properties, Ltd. Shortly thereafter, construction began on Lot 5, and the account was pledged as collateral for loans to Wilkinson Properties, Ltd. to finance the costs of construction, not only on Lot 5 but also on Lot 10. When construction was completed, permanent loans were made by Home Federal to Wilkinson Properties, Ltd. which executed deeds of trust on the lots as security, thereby "freeing up" the account, but Stalcup continued to borrow against it and the account was soon dissipated.[3]

In the Spring of 1991,[4] Wilkinson learned, according to his testimony, that the "CD account had not been properly set up." On July 17, 1992, his attorney enquired of Home Federal about the status of the "CD," and Wilkinson says he discovered that the Pacific check payable to Home Federal was deposited in a "CD account" held by Wilkinson Properties, Ltd. and that it had been pledged to finance construction costs of the chalets. Kim Huff, an employee of Home Federal, testified that during a meeting with Darryl Roberts, a Home Federal officer, and Stalcup, she was instructed by Roberts to "set up" an account in the name of Wilkinson Properties, Ltd.

Home Federal seemingly violated its in-house rules respecting partnership accounts. A Partnership Certification form was required to be executed, but the procedure was not followed. Had this form been completed, the identity of the partners, their addresses, which partner(s) could bind the partnership, the tax ID number and pertinent addresses would have been readily available.

Wilkinson testified that the first indication to him that the "CD account" was not properly handled by Home Federal occurred in the Spring of 1991 when he received a box of documents from Stalcup, followed shortly by a communication from the

---

[2]A "CD account" is a contradiction in terms. Although both briefs refer to the deposited funds as a Certificate of Deposit, it is apparent, and the parties so conceded during argument, that the funds were intended to be deposited in an ordinary savings account. No Certificate of Deposit was issued.

[3]The evidence is confusing as to when, and precisely how, the funds were lost to Pacific, but the parties agree that eventually the funds were applied in payment of Stalcup's personal borrowing.

[4]Three years after delivering of the check to Stalcup.

Tennessee State Bank that Wilkinson Properties, Ltd. had loans outstanding of which he was likely unaware. Wilkinson thereupon engaged counsel to investigate, who requested that Home Federal advise with respect to the "CD account." By letter dated July 20, 1992, Home Federal responded to the request and revealed that Pacific's check had been deposited to an account in the name of Wilkinson Properties, Ltd.

The appellant argues that the trial court should have directed a verdict on the issue of the Statute of Limitations. We respectfully disagree.

As the parties seemingly recognize, the manner of the handling of Pacific's funds was somewhat singular. Home Federal accepted for deposit Pacific's check drawn on a California bank, *payable to itself,* and then deposited the funds to a different account solely upon the instructions of Stalcup, and without reference to the drawer. In light of the testimony of Wilkinson concerning his earliest knowledge of the mishandling of the funds, the issue of the accrual of the Statute of Limitations was for the jury, whose verdict may constitutionally be set aside only if there is no material evidence to support it. *Sands v. Evans,* 635 S.W.2d 377 (Tenn. 1982).

T. C. A. § 28-3-105 requires actions for conversion to be commenced within three years from the accrual of the cause of action, which means from the time when the plaintiff knew or reasonably should have known that a cause of action existed. *Stone v. Hinds,* 541 S.W.2d 598 (Tenn. App. 1976).

The burden of proving the affirmative defense of the Statute of Limitations was upon Home Federal. *See, Prescott v. Adams,* 627 S.W.2d 134 (Tenn. Ct. App. 1981). Appellant recognizes this principle, and argues that after proof of this defense has been proffered the burden shifted to Pacific to prove that the Statute did not begin to accrue until after April 29, 1990, citing *Smith v. Southeastern Properties, Ltd.,* 776 S.W.2d 106 (Tenn. Ct. App. 1989). We have no quarrel with this argument since the general rule respecting the accrual of the Statute of Limitations in cases of this kind is as stated in *Stone, supra.* But appellant says that Pacific failed to present evidence that Home Federal's actions prevented discovery of the misdirected deposit, and that this omission was fatal to its case. We cannot agree.

4

It was the duty of the jury to weigh the evidence directed to the question of when Wilkinson reasonably should have known that Home Federal had converted his funds. Reasonable minds could differ on this issue, and we cannot interfere with the jury function. We acknowledge that there is much about this case that jars the sensibilities, but appellate review is restricted and we are not free to interfere with the findings of the jury. The Court of Appeals does not reweigh the evidence or reevaluate witnesses' credibility in an appeal from a jury verdict. *Grissom v. Metropolitan Gov't. of Nashville,* 817 S.W.2d 679 (Tenn. 1991). The jury chose to accept the testimony of Wilkinson as to when he was aware of a defalcation, or when he should have been aware of an impending loss.

Appellant next complains of the failure of the trial judge to instruct the jury that "ignorance alone cannot toll the Statute of Limitations," because Pacific made no investigation of the "CD account" until July, 1992. It is true that mere ignorance and failure of Wilkinson to discover the existence of a cause of action is not sufficient to toll the statute. *Hall v. DeSaussure,* 297 S.W.2d 81 (Tenn. Ct. App. 1956). The jury was instructed that:

> "Now the defendant takes the position, well okay, those are rules of law, but we have defenses to it and one is the Statute of Limitations, which requires that you file an action within three years after you know or should have known by the use of reasonable diligence that the money has been converted, or that you should have known that during that time period that it had been converted.

> \* \* \*

> The plaintiff has the burden of proving by a preponderance of the evidence that they are not bound by this Statute of Limitations. It's a question of fact for you to determine, when did the plaintiff have notice or when should a reasonable, cautious person have had notice if they had acted as a reasonable person under the circumstances. In other words, when would or should a reasonable, cautious person have known of a conversion under the facts and circumstances of this case if there was a conversion.

> In other words, if there was a conversion, at what point and time did it occur, and when did Pacific have notice or should have had notice of it? Did they file suit within three years of the date they discovered or should have discovered that there was a conversion. If not, they are barred. That's what the Statute of Limitations is about."

5

We think this instruction adequately apprised the jury that Wilkinson could not prevail if he unreasonably failed to investigate the status of his funds with Home Federal.

The court instructed the jury that Home Federal had a duty to enquire into the authority of Stalcup when presenting the check for deposit to the account of Wilkinson Properties, Ltd. Appellant argues that this instruction was improper because Stalcup had apparent authority, as a general partner of Wilkinson Properties, Ltd., to deposit the check.

A short answer to this argument is simply that the check was payable to Home Federal, and drawn on the funds of Pacific. *See* 10 Am. Jur. 2nd, *Banks*, § 560. A check payable to the order of a bank to which the drawer is not indebted precludes its diversion in the absence of instructions by the drawer. There is no evidence in this record that Home Federal was authorized by the drawer of the check to make the funds available to a third party, keeping in mind the testimony of Kim Huff that a Home Federal officer instructed her to "set up" an account in the name of Wilkinson Properties Ltd. Moreover, the jury was instructed to determine whether from all the facts and circumstances Stalcup had the actual or apparent authority to cause Pacific's check to be deposited into an account for Wilkinson Properties, Ltd. This cautionary instruction was directed to the principal defense that Stalcup was authorized to control the negotiation of the check which would exonerate Home Federal. The verdict effectively settled the issue of Stalcup's apparent authority.

The appellant next argues that the trial court erred in refusing to instruct the jury that the taking of a security interest in personal property does not constitute conversion. This instruction is irrelevant under the evidence presented. We have examined the instructions respecting conversion; they are in traditional form and are not questioned.

The Tennessee State Bank was originally a defendant in this action. Pacific settled its complaint against this Bank by the purchase of promissory notes discounted by $61,000.00. Evidence of this disposition was excluded by Motion in Limine based apparently on principles of comparative fault. We see no error; the point is not crucial.

6

Finally, appellant argues that the court erred in charging the jury that Pacific was a depositor in the Home Federal institution because the word "depositor" was misleading.  We see no error in this instruction.

The judgment is affirmed at the costs of the appellant and the case is remanded for all appropriate purposes.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Houston M. Goddard, Presiding Judge


_____
Charles D. Susano, Jr., Judge