IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2009 Session

IN THE MATTER OF:   THE ESTATE OF MAYNIE BESS MORRIS,
DECEASED, ET AL. v. ANITA MORRIS, ET AL.

Direct Appeal from the Chancery Court for Obion County
No. 26,828     W. Michael Maloan, Chancellor

_____

No. W2009-00573-COA-R3-CV - Filed December 9, 2009
_____


The trial court awarded summary judgment to Defendant based on the statute of limitations in this
will contest action.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and
Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S. and
HOLLY M. KIRBY, J., joined.

Charles M. Agee, Jr., Dyersburg, Tennessee, for the appellants, Lee Angela Agee and Page Morris
Mathis.

Charles S. Kelly, Sr., Dyersburg, Tennessee, for the Appellee, Anita Morris.


**OPINION**

        This appeal arises from an action alleging Decedent Maynie Bess Morris ("Decedent")
altered her will as a result of undue influence exercised by Defendant Anita Morris (Ms. Morris).
The Plaintiffs, Lee Angela Agee (Ms. Agee) and Page Morris Mathis (Ms. Mathis; collectively,
"Plaintiffs") are Decedent's only grandchildren.  Plaintiffs' father, Herbert A. Morris, Jr. (Mr.
Morris) was Decedent's only child, and Ms. Morris is Plaintiffs' stepmother.

        Plaintiffs assert that in April 1977, Ms. Morris unduly influenced Decedent to execute a
holographic Will that named Mr. Morris as her only beneficiary.  They assert that, prior to April
1977, Decedent had executed a Will devising Mr. Morris a life estate in real property, with a
remainder to Plaintiffs.  Decedent died in February 1980, and her estate was admitted to probate on
February 15, 1980.  Mr. Morris was appointed executor of Decedent's estate.  Plaintiffs had both
reached the age of majority by April 1981.

In March 2007, Plaintiffs filed a complaint to contest Decedent's will in the Chancery Court for Obion County. They filed an amended complaint in May 2007. In their amended complaint, Plaintiffs asserted that Decedents's April 1977 will was the result of undue influence exerted by Ms. Morris. They asserted that they were minors in April 1977, and that Ms. Morris therefore had an affirmative duty to protect their financial interests. They alleged that, when Decedent executed her holographic will in April 1977, she was dependent on Mr. Morris and Ms. Morris for advice and assistance, and that she lacked testamentary capacity to execute the document. They further alleged that, prior to April 2006, Ms. Morris "fraudulently concealed from Plaintiffs the facts and circumstances of the undue influence she exerted over Maynie Bess Morris and that said fraudulent concealment tolled the applicable statute of limitations for the time to file a will contest." They alleged that, prior to April 1977, Decedent had a valid will that was presently "unavailable" but that named them as beneficiaries. They prayed that Decedent's valid pre-1977 will be established as her last Will and admitted to probate.

In March 2008, Ms. Morris filed an answer denying Plaintiffs' allegations and asserting the defenses of the statute of limitations provided at Tennessee Code Annotated § 32-4-108, lack of standing, and laches. She asserted that Plaintiffs were aware of their potential claim for many years but failed to bring any action until after the death of Mr. Morris. She further asserted that Mr. Morris was the person with the most complete knowledge of the facts and circumstances surrounding Decedent's decision to execute the 1977 will. Ms. Morris also asserted that Plaintiffs lacked standing because they would not have taken any property from Decedent in 1980 under the laws of intestate succession. Ms. Morris also filed a motion for summary judgment or to dismiss the case, asserting that no genuine issues of material fact existed and that the action was barred by the expiration of the statute of limitations and lack of standing. She further asserted that Plaintiffs had failed to state a claim for fraudulent concealment sufficient to toll the statute of limitations.

Following considerable discovery, the trial court heard Ms. Morris's motion for summary judgment in June 2008. In September 2008, the trial court granted the motion based on lack of standing. In its September 2008 order, the trial court found that Plaintiffs lacked standing where they failed to establish a lost Will and where they were not intestate heirs of Decedent. Plaintiffs filed a motion to alter or amend, asserting that the court had not yet held a hearing on the issue of the alleged lost Will. The matter was heard on November 17, 2008, and the trial court set aside its September order awarding summary judgment to Ms. Morris based on standing. The court stated that it would "reconsider" Ms. Morris's motion for summary judgment, and permitted Plaintiffs to file a supplemental memorandum of law and facts. In February 2009, the trial court awarded summary judgment to Ms. Morris based on the statute of limitations. Plaintiffs filed a timely notice of appeal to this Court.

### Issue Presented

Plaintiffs present the following issue for our review:

Did the trial court err in granting summary judgment in favor of Defendant based on the expiration of [the] statute of limitations for will contests set forth in Tennessee Code Annotated § 32-4-108?

### Standard of Review

We review a trial court's award of summary judgment *de novo*, with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 83 (quoting Tenn. R. Civ. P. 56.04). The burden is on the moving party to demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* (citations omitted).

After the moving party has made a properly supported motion, the nonmoving party must establish the existence of genuine issues of material fact. *Id.* (citations omitted). To satisfy its burden, the nonmoving party may: (1) point to evidence of over-looked or disregarded material factual disputes; (2) rehabilitate evidence discredited by the moving party; (3) produce additional evidence that establishes the existence of a genuine issue for trial; or (4) submit an affidavit asserting the need for additional discovery pursuant to Rule 56.06 of the Tennessee Rules of Civil Procedure. *Id.* (citations omitted). The court must accept the nonmoving party's evidence as true, resolving any doubts regarding the existence of a genuine issue of material fact in that party's favor. *Id.* (citations omitted). A disputed fact that must be decided to resolve a substantive claim or defense is material, and it presents a genuine issue if it reasonably could be resolved in favor of either one party or the other. *Id.* (citations omitted).

### Discussion

Section 32-4-108 of the code provides:

All actions or proceedings to set aside the probate of any will, or petitions to certify a will for an issue of devisavit vel non, must be brought within two (2) years from entry of the order admitting the will to probate, or be forever barred, saving, however, to persons under the age of eighteen (18) years or of unsound mind, at the time the cause of action accrues, the rights conferred by § 28-1-106.

Tenn. Code Ann. § 32-4-108 (2007).   Section 28-1-106 provides:

> If the person entitled to commence an action is, at the time the cause of action accrued, either within the age of eighteen (18) years, or of unsound mind, such person, or such person's representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from the removal of such disability.

Tenn. Code Ann. § 28-1-106 (2000).

There is no dispute in this case that, absent any tolling of the statute, the statute of limitations applicable to Will contests as provided by the Code has long expired. Plaintiffs argue, however, that the statute should be tolled because they could not have discovered that they had a cause of action prior to April 2, 2006, when Ms. Agee discovered, during conversation with Ms. Morris and Mr. Morris, that Ms. Morris had told Decedent that Mr. Morris's ex-wife (Plaintiffs' mother) could have him killed for $200.00. Plaintiffs assert that, prior to the April 2006 conversation, they knew only that Ms. Morris had told Decedent that Mr. Morris could not survive financially with only a life estate and that they could not have known about Ms. Morris's alleged "sinister" conduct until the April 2006 conversation took place. They further assert the trial court erred by failing to apply the doctrine of fraudulent concealment to toll the statute.

We turn first to whether Plaintiffs should have been aware that they had a cause of action prior to April 2006. The discovery rule provides that a cause of action accrues when the plaintiff knows or, in the exercise of reasonable care and diligence, should have discovered that he has sustained an injury as a result of the wrongful or tortious conduct of the defendant. *E.g., Doe v. Catholic Bishop for the Diocese of Memphis*, No. W2007-01575-COA-R9-CV, 2008 WL 4253628, at *5 (Tenn. Ct. App. Jan. 22, 2008), *perm. app. denied* (Tenn. Mar. 16, 2009) (citing *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn.1990) (citing *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn.1975); *Teeters v. Currey*, 518 S.W.2d 512, 515 (Tenn. 1974)). It applies to toll the statute of limitations only where the plaintiff "'does not discover and reasonably could not be expected to discover that he had a right of action.'" *Id.* The statute of limitations will not be tolled, however, in cases where "the plaintiff has information that would place a reasonable person on inquiry notice that he may have a cause of action." *Id.* (citations omitted). In cases where the plaintiff discovers an injury but the source remains hidden, the statute has been tolled until the plaintiff can discover the identity of the wrongdoer or source of his injury. *Id.* (citations omitted).

In this case, Plaintiffs do not dispute that they knew that Decedent executed a holographic Will in 1977 at the urging of Ms. Morris. In her response to Ms. Morris's interrogatories and request for production of documents, Ms. Agee stated, "[b]efore April, 2006, Anita had only told me that

she had gotten my grandmother to change her Will be telling her that my dad could not make it financially with a life-estate only." Ms. Mathis stated in her deposition that "Anita Morris has shared with me for years that she got my grandmother to change her Will." She further stated that by the term "years" she meant "all of [her] adult life." Ms. Mathis stated that Ms. Morris had

> said she had to get my grandmother to change her Will because everything was tied up to me and my sister. My father had a life estate. And had they not gotten her to change her Will, it would ruin our father financially, and he would not be able to pay his taxes.

Clearly, Plaintiffs were aware during the limitations period that, assuming Decedent had a validly executed Will prior to 1977, it was altered at Ms. Morris's urging. They also were aware that the alterations were against their interests where Decedent's estate was left to Mr. Morris, and that they did take under the Will. Thus, Plaintiffs were aware of their injury and of its cause. We agree with the trial court that the discovery rule does not toll the statute of limitations in this case.

We next turn to Plaintiffs' assertion that the trial court erred by not applying the doctrine of fraudulent concealment to toll the statute of limitations in this case. Fraudulent concealment has been called a "'close cousin of the discovery rule.'" *Id.* at *6 (quoting *Mark K. v. Roman Catholic Archbishop of L.A.*, 67 Cal. App.4th 603, 79 Cal. Rptr.2d 73, 78 (Cal. Ct. App.1998) (quoting *Bernson v. Brown*, 7 Cal.4th 926, 30 Cal. Rptr.2d 440, 873 P.2d 613 (Cal.1994))). The elements of fraudulent concealment as set forth by the Tennessee Supreme Court are: (1) an affirmative act by the defendant to conceal the cause of action or the failure to disclose material facts despite a duty to speak; (2) that the plaintiff "could not have discovered the cause of action despite exercising reasonable care and diligence"; (3) the defendant must be aware of the wrong; (4) the "concealment of material information from the plaintiff." *Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn.1998) (citations omitted).

In this case, Plaintiffs assert that Ms. Morris concealed her statement to Decedent that Plaintiffs mother could have Mr. Morris killed for $200, thereby implying that their mother would have their father killed in order to gain control over property which would come into the possession of her minor daughters. They assert that they could not have discovered this statement prior to the conversation of April 2, 2006. They further assert that Ms. Morris had a duty to speak resulting from a confidential relationship where they were minors when the Will was executed in 1977.

The *Shadrick* court noted that, in general, the affirmative act to conceal material information must be more than mere silence. *Id.* However, the "failure to speak where there is a duty to speak is the equivalent of some positive act or artifice planned to prevent inquiry or escape investigation." *Id.* (quoting *Hall v. De Saussure*, 41 Tenn. App. 572, 297 S.W.2d 81, 85 (1956)). The court noted that a duty arises when a confidential relationship exists, for example, between a patient and his physician. *Id.* "In such cases, there is a duty to disclose, and that duty may render silence or failure

to disclose known facts fraudulent." *Id.* (quoting *Benton v. Snyder*, 825 S.W.2d 409, 414 (Tenn. 1992)).

In *Shadrick*, the supreme court noted:

The rationale for this rule has been explained as follows:

Fiduciary relationship, confidential relationship, constructive fraud and fraudulent concealment are all parts of the same concept. [T]he nature of the relationship which creates a duty to disclose, and a breach of [that] duty constitutes constructive fraud or fraudulent concealment, springs from the confidence and trust reposed by one in another, who by reason of a specific skill, knowledge, training, judgment or expertise, is in a superior position to advise or act on behalf of the party bestowing trust and confidence in him. Once the relationship exists 'there exists a duty to speak ... [and] mere silence constitutes fraudulent concealment.'

*Id.* at 736 (quoting *Garcia v. Presbyterian Hospital Ctr.*, 92 N.M. 652, 593 P.2d 487, 489-90 (1979) (citations omitted).

Plaintiffs' argument, as we perceive it, is that Ms. Morris had a duty to Plaintiffs, by virtue of their stepparent-child relationship, to disclose the fact that she exerted undue influence over Decedent in order to convince her to change her Will. They assert that the statute of limitations should be tolled because Ms. Morris failed to disclose the full extent of the influence she exerted upon Decedent until April 2006. Plaintiffs assert that it was not until April 2006 that they realized Ms. Morris was "up to no good."

In considering Plaintiffs' argument, we note that the April 2, 2006, conversation took place in the presence of Mr. Morris, who was extremely ill and in bed. In her deposition, Ms. Agee stated that her father was awake during the conversation and that the only comment he made was "I heard it was a thousand dollars." Mr. Morris died shortly thereafter, and Ms. Morris was appointed executrix of his estate on May 24, 2006. Following Mr. Morris's death, Decedent's property passed to Ms. Morris. Plaintiffs argue, in essence, that, although they knew that Ms. Morris had influenced Decedent to change her Will, Ms. Morris owed them a duty to reveal the alleged statement concerning their mother's ability to have their father killed.

In *Phillips v. Phillips*, the supreme court refused to toll the statute of limitations to allow an action filed by three of decedent's siblings to set aside decedent's Will on the grounds of forgery where the Will devised the entirety of the estate to a fourth sibling, E.T. Phillips ("E. T."). *Phillips v. Phillips*, 526 S.W. 439 (Tenn. 1975). The plaintiffs in *Phillips* filed their action more than nine years later, following the death of E.T., when E.T.'s entire estate, including decedent/testatrix's property, passed to E.T.'s wife. *Id.* at 439-440. The plaintiffs in *Phillips* asserted that E.T. knew or should have known that decedent's Will was a forgery, and that a fraud had been perpetrated on

the court. *Id.* The court held that the statute of limitations was not tolled by fraudulent concealment where the Will had been available throughout the limitations period and where there has been no concealment of the cause of action. The *Phillips* court stated, "'[i]t is not the fraud, but its concealment by the party perpetrating it, *unmixed with fault or negligence on the part of him who complains*,'" that tolls the statute of limitations. *Id.* at 440 (quoting *Woodfolk v. Marley*, 98 Tenn. 467, 471, 40 S.W. 479, 480 (1896)) (emphasis added).

In *Roza v. Estate of Reed*, No. 01A01-9303-CV-00135, 1993 WL 439872 (Tenn. Ct. App. Oct. 29, 1993), *perm. app. denied* (Tenn. Mar. 7, 1994), we declined to toll the statute of limitations to allow an action by a plaintiff who alleged he was decedent's sole remaining heir and that decedent's Will, which was probated in 1947, was a fraud where it stated that decedent had no wife or child. *Id*. In *Roza*, we noted:

> To invoke the doctrine that fraudulent concealment of a cause of action tolls the statute of limitations, it is the existence of facts giving rise to a cause of action independent of the concealment, which must have been withheld. "In order for the statute of limitations to be tolled by fraudulent concealment, there must be an allegation that the cause of action was known to the defendant and fraudulently concealed by him; the running of the statute is not prevented by the mere ignorance of the plaintiff and his failure to discover the existence of the cause of action within the statutory limitation does not prevent its running, and if the plaintiff either knew or neglected or failed to discover the cause of action, the statute would not be tolled . . . .
>
> In the absence of a fiduciary relationship, concealment, in order to toll the statute of limitations, must be evidenced by some overt act, but where a fiduciary relationship exists and there is a duty to speak, mere silence may constitute a fraudulent concealment.

*Id.* at *2 (quoting *Soldano v. Owens Corning Fiberglass Corp.*, 696 S.W.2d 887, 889 (Tenn. 1985)(quoting 18 Tennessee Jurisprudence, Limitations of Actions § 42 (1984))). In *Roza*, plaintiff was decedent's grandson, and had been placed in an orphanage when his mother was declared mentally incompetent. *Id.* at *1. When plaintiff filed his action, his grandfather's estate had passed to the wife of plaintiff's alleged father. *Id*. We held that the plaintiff in *Roza* had failed to assert that defendants had concealed facts, either by acts or by silence, that might have established his alleged relationship with his grandfather. *Id.* at *3.

In this case, Plaintiffs do not allege that Ms. Morris concealed the fact that she influenced Decedent to change her Will. On the contrary, they concede that they were aware since childhood that Ms. Morris had influenced Decedent. Additionally, Plaintiffs were aware that their father,

Decedent's only child, would take under Decedent's 1977 Will.[1]  It appears to us that what Plaintiffs were unaware of was that their father failed to devise Decedent's property to them upon his death.

Plaintiffs were or should have been aware that they had a cause of action for undue influence against Ms. Morris for all of their adult lives.  Even assuming Ms. Morris had a duty to speak by virtue of her relationship with Plaintiffs, who were minors in 1977, Plaintiffs have not demonstrated that Ms. Morris concealed the nature of her relationship with Decedent, or that she concealed the fact that she had influenced Decedent to change her Will.  We agree with the trial court that Plaintiffs have failed to allege sufficient facts to demonstrate that Ms. Morris concealed, either by an affirmative act or by silence, facts that were material to putting Plaintiffs on notice of a claim of undue influence such that the statute of limitations should be tolled in this case.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed.  Costs are taxed to the Plaintiffs/Appellants, Lee Angela Agee and Page Morris Mathis, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[1]We note that Decedent's alleged pre-1977 Will had not been established when this matter was heard.

-8-