# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
November 18, 2015 Session

## JULIA H. "ROBIN" MEYERS, ET AL. v. FIRST TENNESSEE BANK, N.A.

**Interlocutory Appeal from the Chancery Court for Greene County**
**No. 20100144    Douglas T. Jenkins, Chancellor**

_____

### No. E2014-01943-COA-R9-CV – Filed May 27, 2016

_____

This is a Tenn. R. App. P. 9 appeal by First Tennessee Bank, N.A. (the Trustee) from the trial court's order denying the Trustee's motion for summary judgment. The beneficiaries of the Ray Haney TUW[1] Residual Trust (the Trust) filed suit against the Trustee for breach of trust. The Trustee asserts that the suit is time-barred; it relies upon Tenn. Code Ann. § 35-15-1005 (2007).[2] The trial court denied the Trustee's motion, holding that there are genuine issues of material fact with respect to whether the suit was timely filed. The Trustee filed an application for an interlocutory appeal, which the trial court granted. We followed suit. We now affirm the trial court's decision denying summary judgment.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Melinda Meador, Knoxville, Tennessee, for the appellant, First Tennessee Bank National Association.

Jeffrey A. Cobble, Greeneville, Tennessee, for the appellees, Julia H. "Robin" Meyers, Laura E. Meyers, and Emily M. Stevens.

_____

[1] Trust Under Will.

[2] Tenn. Code Ann. § 35-15-1005 and others in this chapter – the Tennessee Uniform Trust Code, Tenn. Code. Ann. § 35-15-101, *et seq.* – have been changed since the complaint in this case was filed on May 13, 2010. We will apply the version of the law in effect when the complaint was filed.

# OPINION

## I.

The issues in this case bring into sharp focus the provisions of Tenn. Code Ann. § 35-15-1005. We state the statute in its entirety:

> (a) A beneficiary may not commence a proceeding against a trustee for breach of trust more than one (1) year after the date the beneficiary or a representative of the beneficiary was sent a report that adequately disclosed facts indicating the existence of a potential claim for breach of trust.
>
> (b) A report adequately discloses facts indicating the existence of a potential claim for breach of trust if it provides sufficient information so that the beneficiary or the beneficiary's representative knows of the potential claim or has sufficient information to be presumed to know of it, or to be put on notice to inquire into its existence.
>
> (c) If subsection (a) does not apply, a judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within three (3) years after the first to occur of:
>
> > (1) The removal, resignation, or death of the trustee;
> >
> > (2) The termination of the beneficiary's interest in the trust; or
> >
> > (3) The termination of the trust.

The critical decision in this case depends upon the interpretation of the language of this statute and the application of that language to the facts of this case. We will undertake that analysis later in this opinion; but, first, we will discuss the facts and procedural history of this litigation.

## II.

The Trust became operative in 1980 upon the death of the settlor, Ray Haney. Its assets consisted of two warehouses – one designated "Haney #1" and the other named

"Haney-Bewley #3." The warehouses were under lease during the whole life of the Trust. The Trust was originally administered by Valley Fidelity Bank, the predecessor in interest to the Trustee. The Trust had three beneficiaries – Julia H. "Robin" Meyers and her now adult daughters, Laura E. Meyers and Emily M. Stevens (collectively the beneficiaries). During the life of the Trust, Robin Meyers' husband, Emil Meyers, was involved in the management of, and communications regarding, the assets of the Trust; however, he was not a beneficiary, and there is nothing in the record indicating that he was ever designated to represent any of the three beneficiaries.

In a November 15, 2005 letter addressed to the beneficiaries and Mr. Meyers, the Trustee stated that "this letter to all of the qualified beneficiaries will serve as our notice of resignation as trustee to be effective December 31, 2005." No successor trustee was ever appointed. The beneficiaries assert that they had agreed with the Trustee to terminate the Trust and were, in early 2006, working with the Trustee toward that end. The beneficiaries state that the Trustee's attorney refused to complete the termination process because the beneficiaries would not agree to release all claims against the Trustee. As a result, the termination process stalled. In November 2006, the beneficiaries sued to terminate the Trust. The Trust was terminated by court order on May 16, 2007. By the following November, all of the assets of the Trust had been transferred. Until the assets of the Trust had been distributed, the Bank continued to act in its capacity as the Trustee pursuant to its residual powers.

On May 13, 2010, the beneficiaries filed a complaint against the Trustee, seeking damages for breach of trust. Specifically, the beneficiaries brought suit against the Trustee for

> not properly perform[ing] its duties as the Trustee of the [Trust] which caused the following monetary damages related to the lease of warehouse space in the two warehouses owned by the Trust and managed by the Defendant Trustee:
>
> | | |
> |---|---|
> | Lessee short pays rent on Haney #1 Warehouse | $ 23,548.90 |
> | Lease rental increase not collected by [the Trustee] | 2,088.60 |
> | Haney # 1 Warehouse damage by lessee | 49,525.00 |
> | Haney-Bewley #3 Warehouse damage by lessee | 124,775.00 |
> | [The Trustee's] Property Inspection Fees, Haney #1 | 887.50 |
> | [The Trustee's] Property Inspection Fees, Haney-Bewley #3 | 737.30 |

3

| | |
|---|---|
| Life Tenant Travel Expenses (thru March 2007) | 8,192.62 |
| Life Tenant-Trial Travel Expenses | 936.72 |
| Life Tenant Attorney-CPA Expenses | 12,519.24 |
| Total | $ 223,210.88 |

(Lettering of paragraphs in original omitted.)

The Trustee responded on June 21, 2010, by filing a motion to dismiss or for summary judgment. The Trustee claimed, among other things, that the suit was not timely filed under Tenn. Code Ann. § 35-15-1005. The trial court denied the motion, finding

> there do exist genuine issues of material fact in the instant action which include, and are not limited to, did the [T]rustee in this action send the beneficiaries a report as contemplated by [Tenn. Code Ann. §] 35-15-1005.
>
> And another issue is when did the [T]rustee resign, and when did the trust actually terminate? As genuine issues of material fact exist in this case, this Court concludes that the movant is not entitled to a judgment as a matter of law, and therefore, the motion requesting summary judgment is overruled.

On November 19, 2010, the Trustee filed an answer to the complaint, listing fourteen affirmative defenses, including the statute of limitations. After discovery, the Trustee again moved for summary judgment. It continued to argue that the beneficiaries' complaint was not timely filed. The trial court again denied the motion, finding as follows:

> The gravamen of the Complaint appears to be focused upon the claimed mismanagement of trust real estate as there does not appear to have been shown that the [T]rustee sent a report that adequately disclosed facts indicating the existence of a potential claim for breach of trust concerning management of the warehouses or their condition.
>
> This court concludes that the three-year Statute of Limitations controls. The Motion for Summary Judgment is overruled.

The Trustee was not discouraged. It filed a third and final motion for summary judgment on May 22, 2014. In its third motion, it argued that the beneficiaries had *actual*

4

*knowledge* of their potential claims as early as December 28, 2005, and that this knowledge rendered their complaint filed May 13, 2010, time-barred by the one-year statute of limitations in subsection (a) of Tenn. Code Ann. § 35-15-1005. Additionally, they argued that an October 10, 2008 letter sent by it to the beneficiaries, as well as other regular communications between the parties, amounted to a "report" for the purpose of triggering the one-year statute of limitations. Finally, the Trustee argued that, even assuming the suit was not time-barred by subsection (a) of the statute, it would still be barred under the three-year statute of limitations in subsection (c) because the suit was filed more than three years after the Trustee resigned, which, according to the Trustee, took place effective December 31, 2005. The trial court denied the third motion and found "there is a genuine issue of material fact regarding whether [the Trustee] complied with the reporting requirement contained within Tenn. Code Ann. § 35-15-1005(a) [so as] to trigger the running of the statute of limitations" and "there is a genuine issue of material fact regarding whether Defendant's resignation on December 31, 2005, was effective for purposes of triggering the statute of limitations. . . ."

The Trustee requested an interlocutory appeal, which was granted by the trial court. The court stated in its order that, had it granted summary judgment, its judgment "would have been dispositive of the case in its entirety" and that if the trial court's "decision is reversed and the case barred by the statute of limitations, there will be no trial, thus avoiding needless, expensive, and protracted litigation." The trial court, in an excellent analysis of the issues, stated the following:

> This is a case of first impression in Tennessee. The Tennessee Uniform Trust Code, T[enn].C[ode] A[nn]. § 35-15-101, *et seq.* (2013) ("Trust Code"), was adopted in 2004, and only a few cases interpreting the Trust Code have been reported. There have been no appellate court opinions regarding the provisions of the applicable statute of limitations found at T[enn].C[ode] A[nn]. § 35-15-1005. In the absence of appellate court guidance, this Court has adopted a literal reading of both the one-year statute of limitations, § 35-15-1005(a), and the three-year statute of limitation, § 35-15-1005(c), and reached the following conclusions.
>
> (a) In order to trigger the running of the one-year statute, the provisions of T[enn].C[ode] A[nn]. § 35-15-1005(a) require the Trustee to make "a report" to the beneficiaries that "adequately disclosed facts indicating the existence of a potential claim for breach of trust." Plaintiffs assert that no such report was ever made. Defendant asserts that Plaintiffs had actual knowledge of the damages as of December 28,

5

2005, and thus the one-year limitations period began to run from that date. Alternatively, Defendant asserts that a "report" in the form of correspondence was delivered to Plaintiffs in October 2007,[3] at which time the one-year limitations period began to run. This Court has concluded that there is an issue of fact regarding whether Defendant issued a "report" that adequately disclosed the damages of which Plaintiffs complain, and thus the three-year limitations period may apply.

(b) If subsection (a) of § 35-15-1005 does not apply, then claims must be brought against a trustee within three (3) years of either resignation of the trustee or termination of the trust. In this case, it is undisputed that Defendant notified Plaintiffs by letter of its intent to resign as [the] Trustee, effective December 31, 2005. Plaintiffs opted to move for termination of the Trust, and the Trust was terminated by Order of this [c]ourt on May 16, 2007. Defendant takes the position that its resignation was effective on December 31, 2005, even though it continued to act as [the] Trustee until termination of the Trust. Plaintiffs say that there was no resignation until the Trustee completed its service and divested the Trust of all assets in late 2007. Thus, the Court finds there is a question of fact regarding whether the resignation was effective as of December 31, 2005. Therefore, if T[enn].C[ode] A[nn]. § 35-15-1005(a) does not apply in this instance, the operative date for purposes of triggering the running of the statute of limitations in this case is the date the Trust terminated on May 16, 2007, or, alternatively, on the date Defendant completed its service and divested the Trust of all assets in late 2007.

Again, this Court recognizes that this is a case of first impression, and guidance from the appellate court will aid in the development of a uniform body of law interpreting the Trust Code's statute of limitations.

---

[3] Before the trial court and now before us, the Trustee has maintained that it sent a letter dated October 2008 – rather than October 2007 – to the beneficiaries and that this letter triggered the running of the one-year statute of limitations. There is no mention in the Trustee's May 22, 2014 third and last motion for summary judgment that the beneficiaries were sent such a letter in October 2007.

(Footnote added.)

## III.

As previously noted, we granted the Trustee's request for an interlocutory appeal. We certified the following issue for review:

> [W]hether the cause of action for breach of fiduciary duty against [the Trustee] was barred by the running of the statute of limitations set forth in Tennessee Code Annotated section 35-15-1005.

The Trustee, in its brief, states that "the issues presented for review" are:

> Does a beneficiary's *actual knowledge of a potential claim for breach of trust* trigger the one-year statute of limitations for breach of trust claims, pursuant to T.C.A. § 35-15-1005(a)?
>
> Does the concept of "inquiry notice" form the basis for the reporting disclosure found in the one-year statute of limitations at T.C.A. § 35-15-1005(a) and § 35-15-1005(b)?
>
> Alternatively, does a detailed response to written allegations of Trust mismanagement constitute a "report" for purposes of triggering the one-year statute of limitations?

(Emphasis in original; paragraph numbering in original omitted.)

"For interlocutory appeals, the only issues that can be raised are those certified in the trial court's order granting permission to seek an interlocutory appeal and in the appellate court's order granting the interlocutory appeal." *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000) (citing *Tenn. Dep't of Mental Health & Mental Retardation v. Hughes*, 531 S.W.2d 299, 300 (Tenn. 1975)). "To the extent the issues are broader, they cannot be considered." *Montcastle v. Baird*, 723 S.W.2d 119, 122 (Tenn. Ct. App. 1986). The issues raised by the Trustee are subsets of the issue certified by the trial court and us. Since the issues of the Trustee do not "broaden" the certified issue, we will consider them.

## IV.

The principles pertaining to summary judgment are as follows:

7

A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008). When ruling on a summary judgment motion, the trial court must accept the nonmoving party's evidence as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party. *Shipley v. Williams*, 350 S.W.3d 527, 536 (Tenn. 2011) (quoting *Martin v. Norfolk S. Ry. [Co.]*, 271 S.W.3d 76, 84 (Tenn. 2008)). "A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). "The granting or denying of a motion for summary judgment is a matter of law, and our standard of review is de novo with no presumption of correctness." *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010).

*Lamar Tenn., LLC v. City of Knoxville*, No. E2014-02055-COA-R3-CV, 2016 WL 746503, at *5-6 (Tenn. Ct. App., filed Feb. 25, 2016) (quoting *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013); *see also Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264 (Tenn. 2015)). A motion for summary judgment must be denied "if there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact[.]" *Garner v. Coffee Cty. Bank*, No. M2014-01956-COA-R3-CV, 2015 WL 6445601, at *4 (Tenn. Ct. App., filed Oct. 23, 2015) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993)) (internal quotation marks removed).

In the case now before us, many of the facts are undisputed. What is vigorously disputed are "the conclusions to be drawn from [those] fact[s]."

This appeal also raises questions of statutory interpretation, "which we . . . review de novo with no presumption of correctness." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 366 (Tenn. 2012) (citing *Austin v. State*, 222 S.W.3d 354, 357 (Tenn. 2007)). When interpreting statutes,

[the] Supreme Court has stated . . . courts are to "give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope."

8

> *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). The courts should determine intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). Further, the rules of statutory construction direct courts not to "apply a particular interpretation to a statute if that interpretation would yield an absurd result." *State v. Sims*, 45 S.W.3d 1, 11 (Tenn. 2001).

*Wood v. Lowery*, 238 S.W.3d 747, 764 (Tenn. Ct. App. 2007).

## V.

The beneficiaries assert in their brief that

> in light of this being an appeal of the third motion for summary judgment filed by the [Trustee], Appellees hereby assert that the doctrines of waiver and equitable estoppel must govern the instant appeal, such that any new arguments which were raised after the first Brief submitted by Appellant should be stricken. [The Trustee] should not be given three attempts to continue to raise arguments in support of its position.

(Emphasis in original omitted.) The beneficiaries do not cite any authority for their position that "the doctrine of waiver and equitable estoppel must govern." With regard to the facts in this case, we do not know of any legal basis for their assertion. If the beneficiaries are saying that arguments made by the Trustee at the hearing below on the first motion for summary judgment and rejected by the trial court cannot be raised again, that simply is not the law.

## VI.

## A.

As previously noted, the Trustee, in its motion for summary judgment, argues that the beneficiaries' suit was untimely under the one-year statute of limitations in Tenn. Code Ann. § 35-15-1005(a) and also under the three-year statute of limitations in Tenn. Code Ann. § 35-15-1005(c). Subsection (c) of that statute only applies if subsection (a) does not. For this reason, we first will consider the evidence pertaining to whether the beneficiaries' suit was timely filed under subsection (a).

**B.**

The Trustee asserts that a beneficiary's "actual knowledge of a potential claim will trigger the running of the statute" under Tenn. Code Ann. § 35-15-1005(a). The Trustee argues that, as a result, the statute of limitations began to run at that time and had expired well before the beneficiaries filed their suit on May 13, 2010. The Trustee alternatively argues that the one-year statute of limitations began running when the beneficiaries were put on notice to inquire into their potential breach of trust claim.

The Trustee cites the federal case of **Parris v. Regions Bank**, No. 09-2462, 2011 WL 3629218, at *4 (W.D. Tenn., filed Aug. 17, 2011), to support its argument. In **Parris**, a United States District Court applied Tennessee substantive law and considered the statute of limitations in Tenn. Code Ann. § 35-15-1005(a). That court addressed the inquiry notice issue as follows:

> Although Tennessee courts have not interpreted these UTC [Uniform Trust Code] provisions, they incorporate the "inquiry notice" concept that is also part of Tennessee's discovery rule. *See* **Sherrill v. Souder**, 325 S.W.3d 584, 593 (Tenn. 2010); **Estate of Morris v. Morris**, 329 S.W.3d 779, 783 (Tenn. Ct. App. 2009) (describing inquiry notice) (citations omitted). "It is now well-established that, where applicable, the discovery rule is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained." **Pero's Steak & Spaghetti House v. Lee**, 90 S.W.3d 614, 621 (Tenn. 2002) (citation omitted). "The statute of limitations will not be tolled, however, in cases where the plaintiff has information that would place a reasonable person on inquiry notice that he may have a cause of action." **Estate of Morris**, 329 S.W.3d at 783 (citation omitted); *see* **Sherrill**, 325 S.W.3d at 593 (explaining that "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct") (citation omitted). Where a plaintiff has inquiry notice, that notice is "notice of all the facts to which inquiry will lead, when prosecuted with reasonable diligence and good faith." **Estate of Darnell v. Fenn**, 303 S.W.3d 269, 280 (Tenn. Ct. App. 2009); *see* **Blevins v. Johnson Cnty.**, 746 S.W.2d 678, 682 (Tenn. 1988) (citations omitted).

10

* * *

> "Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run." *Operator Indep. Drivers Ass'n v. Comerica Bank*, 636 F.3d 781, 802 (6th Cir. 2011) (citing *Campbell v. Grand Trunk Western R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)); *see also Arnett* [*v. Myers,*] 281 F.3d [552, 561 (6th Cir. 2002)]; *Marksbury*, 2011 WL 1832883, at *2-3. Regions must proffer evidence that would require a reasonable jury to conclude that Parris had inquiry notice more than one year before he brought suit. *See Operator Indep. Drivers Ass'n,* 636 F.3d at 802; *Arnett*, 281 F.3d at 561; *Marksbury*, 2011 WL 1832883, at *2-3.

2011 WL 3629218, at *4-5.

As the trial court made clear in its order granting the beneficiaries permission to seek an interlocutory appeal, this case is one "of first impression in Tennessee," such that "[t]here have been no [Tennessee] appellate court opinions regarding the provisions of the applicable statute of limitations found at T[enn].C[ode] A[nn]. § 35-15-1005." As far as we can determine, Tenn. Code Ann. § 35-15-1005 has been cited in only one appellate decision, *i.e.*, *Convention of Protestant Episcopal Church in Diocese of Tennessee v. Rector, Wardens, & Vestrymen of St. Andrew's Parish*, No. M2010-01474-COA-R3-CV, 2012 WL 1454846, at *21 (Tenn. Ct. App., filed Apr. 25, 2012). However, in that case, we quickly declined to apply the one-year statute of limitations because the suit at issue was "not a breach of trust action," such that "[n]o 'report' as envisioned by the statute was delivered; no allegation of breach of trust was made." *Id.* In *Parris*, none of the cases cited there interpret the statute of limitations in Tenn. Code Ann. § 35-15-1005, though it was at issue in *Parris* and is at issue in the case now before us. Instead, the *Parris* court cited cases that interpret Tennessee's general "discovery rule." 2011 WL 3629218, at *4. *Parris* did not address whether the statute's discovery rule is different from the Tennessee general discovery rule. As we will show, we do not believe the Tennessee general discovery rule applies in cases such as the one now before us.

The Supreme Court originally adopted the general discovery rule in *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974). This rule provides that "the statute of limitations begins to run 'when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant.' " *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 143 (Tenn. 2001) (quoting *Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998)). Originally, the court adopted the rule for application in certain medical malpractice cases. *Teeters*, 518 S.W.2d at 517. However, the discovery rule has been

11

"subsequently expanded . . . to other common law negligence, strict liability, and misrepresentation actions." ***Gerdau Ameristeel, Inc. v. Ratliff***, 368 S.W.3d 503, 507 (Tenn. 2012). This rule "has ameliorated the hardship which sometimes arises from the operation of statutes of limitations, by making it less likely that such a statute will unfairly deprive a plaintiff of all opportunity to enlist the assistance of the courts to vindicate his claim." ***Steele v. Tenn. Jaycees, Inc.***, No. 01-A-01-9505-CH00214, 1995 WL 623067, at *2 (Tenn. Ct. App., filed Oct. 25, 1995). Still, it "was not meant to allow a party to delay filing his claim until after he has completed the process of discovering all the factors that affect its merits." ***Id.*** at *5. To determine whether to apply the discovery rule, we "consider[ ] the specific statutory language at issue, and balance[ ] the policies furthered by application of the discovery rule against the legitimate policies upon which statutes of limitations are based." ***Quality Auto Parts Co. Inc. v. Bluff City Buick Co., Inc.***, 876 S.W.2d 818, 820 (Tenn. 1994) (citation omitted).

The ***Parris*** court described the discovery rule as an "equitable exception." 2011 WL 3629218, at *4 (internal citations omitted). The Trust Code specifically provides that it is supplemented by "principles of equity . . . *except to the extent modified by this chapter*. . . ." Tenn. Code Ann. § 35-15-106 (2007) (emphasis added). To determine whether a beneficiary's receipt of "actual knowledge of a potential claim for breach of trust" or "notice to inquire into" such a claim triggers the one-year statute of limitations in Tenn. Code Ann. § 35-15-1005(a)-(b), we " 'must look to the plain language of the statute to determine the intent of the legislature.' " ***State v. Smith***, No. M2015-01289-CCA-R3-CD, 2016 WL 560377, at *2 (Tenn. Crim. App., filed Feb. 12, 2016) (quoting ***State v. Hogg***, 448 S.W.3d 877, 887 (Tenn. 2014)). "When the language of the legislature is clear and unambiguous, the court should apply the plain language in its normal and accepted use." ***Id.***

We again state the language of Tenn. Code Ann. § 35-15-1005:

> (a) A beneficiary may not commence a proceeding against a trustee for breach of trust more than one (1) year after the date the beneficiary or a representative of the beneficiary was sent a report that adequately disclosed facts indicating the existence of a potential claim for breach of trust.

> (b) A report adequately discloses facts indicating the existence of a potential claim for breach of trust if it provides sufficient information so that the beneficiary or the beneficiary's representative knows of the potential claim or has sufficient information to be presumed to know of it, or to be put on notice to inquire into its existence.

12

(c) If subsection (a) does not apply, a judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within three (3) years after the first to occur of:

(1) The removal, resignation, or death of the trustee;

(2) The termination of the beneficiary's interest in the trust; or

(3) The termination of the trust.

The statute provides two separate time periods within which a beneficiary may commence a proceeding for breach of trust against a trustee – a one-year period listed in subsection (a), and a three-year period listed in subsection (c) that applies only if subsection (a) does not apply. The plain language of subsection (a) indicates the one-year period begins to run from ". . . the date the beneficiary . . . was sent a report[.]" Tenn. Code Ann. § 35-15-1005(a). The official Advisory Commission comment to the statute further provides that "[s]ubsection (a) applies *only if* the trustee has furnished a report," and "[s]ubsection (c) . . . applies to cases in which the trustee has failed to report to the beneficiaries or the report did not meet the disclosure requirements of subsection (b)." Tenn. Code Ann. § 35-15-1005 cmt. (emphasis added). Accordingly, the one-year statute of limitations is triggered *only* by sending a report to the beneficiary or the beneficiary's representative that meets the statutory disclosure requirements.

Language describing when a beneficiary acquires "actual knowledge of a potential claim for breach of trust" does not appear in Tenn. Code Ann. § 35-15-1005(a). Subsection (a) describes the type of report that can trigger the one-year period – one that "adequately disclosed facts indicating the existence of a potential claim for breach of trust." Subsection (b) further describes what constitutes an adequate disclosure. The interplay between the two subsections focuses squarely on the report and its contents. Since subsections (a) and (b) expressly provide the event that triggers the running of the statute of limitations, we conclude and hold that a beneficiary's acquisition of actual knowledge of a potential claim for breach of trust does not in and of itself trigger the statutory one-year period. The beneficiary's "know[ledge] of the potential claim" *is only relevant to trigger the one-year period if that knowledge was acquired through a report, with the required disclosures, sent to the beneficiary*.

Similarly, the plain language of the statute does not provide that the one-year period listed in subsection (a) is triggered by a beneficiary being "put on notice" through *any* means "to inquire into" the existence of a breach of trust. Instead, as previously noted, the statute provides that the one-year period begins to run on the date a report is sent to the beneficiary that "provides sufficient information" to put the beneficiary on notice to inquire into the existence of a potential claim for breach of trust. We are not

13

permitted to extend a statute beyond its "natural and ordinary meaning." *Wood*, 238 S.W.3d at 764 (quoting *Flemming*, 19 S.W.3d at 197) (internal quotation marks removed). Furthermore, we cannot infer that the Legislature intended for the beneficiary's acquisition of actual knowledge of, or notice to inquire into, a potential claim for breach of trust to be a basis for triggering the one-year statute of limitations.

Applying the general discovery rule to the statute of limitations for a breach of trust claim would override the explicit requirement in Tenn. Code Ann. § 35-15-1005(a) that the one-year period begins running the date an adequate report is sent to the beneficiary or its representative. Under subsection (a), sending this report is the event that triggers the one-year statute of limitations. Conversely, the general discovery rule provides that the statute of limitations is triggered when the injury is discovered or when "in the exercise of reasonable care and diligence," the injury should have been discovered. *Estate of Morris*, 329 S.W.3d at 783. Although the language of subsection (b) is similar to the language of the general discovery rule, subsection (b) is describing what constitutes "[a] report that adequately discloses facts indicating the existence of a potential claim for breach of trust . . . ." According to its plain language, the statute and the general discovery rule prescribe conflicting events to trigger the running of a statute of limitations. As a result of that conflict, the general discovery rule must give way to the statutory scheme. *See Graves v. Ill. Cent. R. Co.*, 148 S.W. 239, 242 (Tenn. 1912) ("[w]hen there is a conflict between the common law and a statute, the provision of the statute must prevail"); *Hodge v. Craig*, 382 S.W.3d 325, 338 (Tenn. 2012) ("[c]ommon-law principles and rules govern unless they have been changed by statute").

Since the one-year statute of limitations in subsection (a) begins to run when a beneficiary is sent a report with the information described in the statute, the Trustee's assertion that the beneficiaries "had actual knowledge of their claims as of December 28, 2005" is not sufficient to establish that the one-year statute of limitations was triggered on that date.

## C.

Our Trust Code provides only broad guidance for what constitutes a "report." An Advisory Commission comment to Tenn. Code Ann. § 35-15-813 (2007) states that the

> Trust Code employs the term "report" instead of "accounting" in order to negate any inference that the report must be prepared in any particular format or with a high degree of formality. The reporting requirement might even be satisfied by providing the beneficiaries with copies of the trust's income tax returns and monthly brokerage account statements if the information on those returns and statements is complete and sufficiently clear. *The key factor is not the format chosen*

14

*but whether the report provides the beneficiaries with the information necessary to protect their interests. . . .*

(Emphasis added.) In **Parris**, the federal court considered whether a letter sent by a co-trustee to the representative of a beneficiary conveyed sufficient information to put the recipient on inquiry notice of a potential breach of trust. 2011 WL 3629218, at *4-5. Ultimately, that court declined to find the letter was sufficient to trigger the one-year period based on its *content*, not its *format*. **Id.** at *5 (quoting Tenn. Code Ann. § 35-15-1005(b) ("the letter does not require a reasonable trier of fact to conclude that [the plaintiff] was 'on notice to inquire into' the existence of a potential claim for breach of trust")). Because "report" is not expressly defined in the statutory scheme, we interpret it according to its "plain and ordinary" meaning. *See **Snyder v. First Tenn. Bank, N.A.**,* No. E2015-00530-COA-R3-CV, 2016 WL 423806, at *9 (Tenn. Ct. App., filed Feb. 3, 2016) (citing **Shockley v. Mental Health Coop., Inc.**, 429 S.W.3d 582, 591 (Tenn. 2013)).

As stated above, to trigger the one-year statute of limitations, such a report must be sent to "the beneficiary or a representative of the beneficiary." Tenn. Code Ann. § 35-15-1005(a). Tennessee's Trust Code defines "beneficiary," in part, as "a person" who "[h]as a present or future beneficial interest in a trust, vested or contingent." Tenn. Code Ann. § 35-15-103(3)(A) (2007). In the statement of undisputed material facts submitted with the motion for summary judgment, the Trustee stated "the plaintiffs" – identified on the same document as Julia H. "Robin" Meyers, Laura E. Meyers, and Emily M. Stevens – "were the beneficiaries of the [Trust]." The Trustee argues that on several occasions it sent a "report" sufficient to trigger the one-year period in Tenn. Code Ann. § 35-15-1005(a).

The beneficiaries state that "[t]he gravamen of the case before the court is the management of the trust real estate, not the mismanagement of the trust bank account." The beneficiaries admit that the Trustee "initially provided quarterly reports, and then later monthly reports, to the beneficiaries about the trust financial accounts," but add that the [T]rustee "did not provide reports concerning the condition or mismanagement of the trust real property." (Emphasis in original omitted.) The beneficiaries assert that facts that would have indicated a potential claim for breach of trust "would not have been found in a financial report, but in a report on the condition of the warehouses owned by the Trust."

The beneficiaries argue that "no information regarding the defects in the condition of, or the management of, the real estate was ever reported by the Trustee in any form." (Emphasis in original omitted.) They state in their brief that "it is obvious that there could be no report sent to" them because "it appears from the record that the [Trustee] did not even perform an inspection of the interior damage or exterior damage of the warehouses." In support, they cite the deposition testimony of the Bank's Vice President

15

and Trust Real Estate Officer Douglas McKamey. He stated that the bank did not create reports that listed damages to the interior or exterior of the buildings. We note, though, that a report does not have to be in any particular format. Tenn. Code Ann. § 35-15-813 cmt. Again, a report may be adequate for purposes of Tenn. Code Ann. § 35-15-1005(a) so long as it "provides sufficient information so that the beneficiary . . . knows of the potential claim or has sufficient information to be presumed to know of it, or to be on notice to inquire into its existence." Tenn. Code Ann. § 35-15-1005(b).

The Trustee argues, in part, that it sent the beneficiary a report through one of the many "phone calls, faxes, letters, and meetings between the parties." To consider facts at the summary judgment stage, they "must be included in the record . . . and they must be admissible in evidence." *Watson v. Waters*, 375 S.W.3d 282, 291 (Tenn. Ct. App. 2012) (citing *Byrd*, 847 S.W.2d at 215-16; Tenn. R. Civ. P. 56.03, 56.06). In its brief, the Trustee evidences the "numerous phone calls . . . and meetings between the parties" in part by citing to summaries prepared by Emil Meyers, husband of Robin Meyers, a beneficiary. Although the Trustee cites to Mr. Meyers' summaries in support of its position in this case, the Trustee then turns around and says in a footnote that "[t]he summaries prepared by Emil Meyers are pure hearsay and will be objected to at trial." If they are inadmissible "heresay," we cannot consider them on summary judgment. In further support of its position, the Trustee refers to an interrogatory in which the Trustee had asked the beneficiaries to describe specific facts to support their claim. The beneficiaries responded that, "[v]olumes of paperwork, emails, letters and exhibits have been previously exchanged." The response to the interrogatory is insufficient to establish that the beneficiaries were sent a report for purposes of Tenn. Code Ann. § 35-15-1005. Namely, their answer does not include the substance of those exchanges or indicate what information, specifically, was sent to the beneficiaries. Facts that are not in the record cannot be considered in connection with a motion for summary judgment.

The Trustee also argues that it sent a report through "an email exchange between the parties . . . in which warehouse structural flaws were analyzed, engineers were consulted, and damages were calculated," and specifically, a June 17, 2005 email "to the Meyers stating that [the Trustee] had not routinely kept inspection reports for either warehouse." To analyze whether the beneficiaries were sent a report sufficient to trigger the statute of limitation in Tenn. Code Ann. § 35-15-1005(a), we will include the most relevant correspondence included in the record. Neither the beneficiaries nor the Trustee have disputed the authenticity of the correspondence.

In a letter dated March 10, 2005, Emil and Robin Meyers wrote to McKamey, vice president and trust real estate officer at the Bank, listing repairs needed in "Haney Warehouses Numbers 1 & 3." The letter was sent *by* a beneficiary, Robin Meyers; it was not sent *to* a beneficiary. As a result, it does not fall within the language of Tenn. Code Ann. § 35-15-1005(a), which starts the running of the limitations period ". . . the date the

beneficiary . . . *was sent a report . . .*" and "applies *only if* the trustee has furnished a report." Tenn. Code Ann. § 35-15-1005(a), cmt. (emphasis added).

A letter from Robin and Emil Meyers to McKamey, among others, on December 13, 2005, talks about an inspection of the roof support poles in Haney #1 Warehouse that was done with the intent of reviewing the findings of a structural engineer who had been contracted to inspect the warehouses and furnish a written report. The letter does not suggest any mismanagement on the part of the Trustee or establish that "the beneficiary . . . was sent a report that adequately disclosed facts indicating the existence of a potential claim for breach of trust." Tenn. Code Ann. § 35-15-1005(a). Additionally, the letter is from one beneficiary to the Trustee. Therefore, it also does not fall within the language of Tenn. Code Ann. § 35-15-1005(a).

Robin and Emil Meyers wrote to McKamey by email on May 26 and June 15, 2005, requesting "copies of the building inspection reports for Haney #3 and Haney #1." The emails do not indicate that they were sent to Laura Meyers or Emily Stevens. The messages do indicate they were sent to Brad Stevens, who is elsewhere identified as Emily Stevens' husband. In the May 26 email, Robin and Emil Meyers listed and described an estimated cost for repairs in both warehouses and stated:

> In order to assign lessee responsibility for damages to both warehouses we need to produce the building inspection reports at the transition of tenants on June 30, 1997 for Haney #3 and December 20, 1997 for Haney #1. . . .
>
> *As [the T]rustee for the [Trust], you would have made these inspections in fulfilling your fiduciary responsibility at the termination of a lease and the beginning of a new lease with each tenant.* These inspections would be in addition to the normal inspections made during the normal term of any lease to insure [sic] that the building(s) are being maintained as specified in the lease.
>
> Please forward copies of these inspections immediately for our review as there is considerable damage to both buildings and structural alterations which jeopardize the integrity of the buildings.

(Emphasis added.) McKamey sent a reply by email to Robin and Emil Meyers on June 17, 2005, stating in part,

> We searched our files on both warehouses and were unable to find any reports made for either warehouse concerning a

17

walk-through/inspection at the time of the changeover [in tenants]. As I think I mentioned to you earlier, I was not with the Bank at that time and obviously don't have any first hand knowledge of what took place during the changeover. Nor were we able to find any letters dating from that period advising [a tenant] of any damages for which they were responsible.

The above message was also copied to Brad Stevens, among others, but there is no indication that it was sent to Laura Meyers or Emily Stevens.

Robin and Emil Meyers responded to McKamey by email on July 18, 2005, still copying Brad Stevens, among others, but not including Laura Meyers or Emily Stevens:

This is to confirm your e-mail of June 17, 2005, in relation to your statement that after a diligent search you have been unable to locate any reports made for either warehouse, Haney #3 or Haney #1, that could be used to document a walk-through inspection made at the time of the change-over of tenants. . . . Furthermore, based on your statement that both files of both warehouses have been searched, there are no records that indicate any walk-through inspection was completed when the change-over in tenants was made. . . . In addition, [the Trustee] is unable to produce any inspection reports or any letters to any of the past tenants regarding damages to the buildings and the tenant's responsibility to repair the damages under the terms and conditions of the leases that could be utilized in an action against the tenants for the damages since the trust was established in the year 1980.

Please advise if the above information is not correct within the next thirty (30) days.

On August 4, 2005, McKamey forwarded Robin and Emil Meyers, via facsimile, a letter dated July 29, 2005, that he had received from William Nunnally, attorney for the Bank in its capacity as the Trustee. In the letter, Nunnally discouraged pursuing legal action to recover damages from warehouse tenant Distribution Services. Among other reasons for his advice, he stated

the lease for No. 3 began a number of years ago when it is likely that some of these damages that we now identify had already occurred. It would be very difficult to establish

18

which damages to the warehouses predated occupancy by Distribution Services versus those that occurred after their occupancy. Unless we can be precise in such proof, the Court might rule that no claim for damages can be awarded at all.

McKamey also replied to Robin and Emil Meyers' July 18 message through an email sent on August 9, 2005, but only to Robin and Emil Meyers:

*Although inspections were made and inspection reports exist*, *none that I have found were completed at the same time as the change-over of the tenants. I am reluctant to say from* [sic] *sure that there is nothing that could be utilized in an action for damages against the tenants*; I would simply have to consult with our attorney in any action against the tenants.

As far as the remainder of your July 18 inquiry is concerned, I would simply refer you to my June 17 message. Please let me know if I may be of further assistance.

(Emphasis added.) Robin and Emil Meyers responded by email on August 11, 2005, also – based on the correspondence as it appears in the record – sending the message to Brad Stevens, among others, but not sending the message to Laura Meyers or Emily Stevens:

What we are trying to determine is: Are there any inspection reports that show/discover damage for which the tennant [sic] is responsible based on the terms and conditions of the lease? These inspection reports could be at any time during any tenant's occupancy, not just at a changeover between tennants. In addition, if damage was determined to be a tenant responsibility, there should be a letter from the bank, as [the T]rustee, advising the tennant to make repairs, again, based on the terms and conditions of the lease. The bank, again as [the T]rustee, should have some follow-up documentation that shows that the repairs were made by the tennant[.]

We think it is premature for you to consult with an attorney. We would like to determine what documents you have on file that reflect what we have discussed in the paragraph above.

The next day, McKamey replied "No, there are none" in an email sent only to Robin and Emil Meyers.

19

The Trustee states in its brief,

> [T]he Trustee most assuredly did _send_ a _report_ (in the form of an email) to the Meyers stating that it had not routinely kept inspection reports for either warehouse. That particular report, sent on June 17, 2005 – <u>five years before the complaint was filed</u> – put the Meyers on notice of a potential claim. Short of mailing them a document entitled "REPORT OF POTENTIAL CLAIM FOR BREACH OF TRUST," it is difficult to imagine what more the Trustee could have done to meet the requirements of T.C.A. § 35-15-1005.

(Underlining, capitalization, and italics in original.) We disagree. Most notably, nothing in the June 17, 2005 email indicates that it was sent to two of the three beneficiaries. The statute of limitations in Tenn. Code Ann. § 35-15-1005(a) begins running against "[_a_] _beneficiary . . . the date the beneficiary . . . . was sent a report . . . ._" (Emphasis added.) Regardless of whether the above correspondence constitutes a "report" as contemplated under the statute, it cannot trigger the running of the statute of limitations against a beneficiary who was not an addressee of the correspondence.

Additionally, a question exists as to whether the content of the correspondence from McKamey "disclosed facts indicating the existence of a potential claim for breach of trust" to beneficiary recipient Robin Meyers. Tenn. Code Ann. § 35-15-1005(a). The Trust Code defines a breach of trust as "[a] violation by a trustee of a duty the Trustee owes to a beneficiary." Tenn. Code Ann. § 35-15-1001(a) (2007). In the email sent May 26, 2005, Emil and Robin Meyers expressed their expectation that the Trustee would conduct certain inspections. In the June 17, 2005 email, the Trustee admitted that it could not locate a record of any such inspection made during the transition between tenants. The Trustee's alleged failure to conduct certain inspections is central to the breach of trust claim against them. For instance, the beneficiaries have argued, "[s]ince the [Trustee] never did an inspection for damages, then the trust was never able to recover from the tenants" for the damage they caused to the property. Significantly, though, on August 9, 2005, after forwarding Robin Meyers the letter from Nunnally, McKamey walked back his earlier statement and assured Robin and Emil Meyers that "inspections were made and inspection reports exist" but that "none that I have found were completed" at the time the Meyers requested. McKamey concluded by adding he was "reluctant to say from [sic] sure that there is nothing that could be utilized in an action for damages against the tenants." He later informed Emil and Robin Meyers on August 12, 2005, that the Trustee could not locate the type of reports they envisioned to pursue a claim against the former tenants. McKamey's statements clearly conveyed that the desired information was unavailable, but his statements also conveyed that the Trustee made inspections, kept reports, and that perhaps some other means could be "utilized in an action for damages against the tenants." Therefore, it is unclear whether the exchange,

20

in its totality, "disclosed facts indicating the existence of a potential claim for breach of trust."

On February 15, 2007, Emil and Robin Meyers sent an email message to McKamey, among others at the Bank, requesting "a copy of the Inspection Reports for Haney #1 and Haney-Bewley #3, per your inspection in December 2006." The following day, McKamey replied by email, informing them, in part, that "I have been advised that the inspection reports are internal documents and not something we provide in the ordinary course of business. Consequently, I am unable to provide you with these documents." On February 17 and 25, 2007, Emil and Robin Meyers responded by email, asking McKamey if he could "call to our attention any repair requirements noted during your inspection?" On March 2, 2007, McKamey responded, in part, that he and another representative of the Bank "did not note any needed repairs in our most recent inspection that had not already been noted in one or more of the past inspections which I made with the two of you. While there are repairs that could be made, they are not necessarily imminent." The correspondence from McKamey conveys that the warehouses were inspected, no new problems were found, and that inspection reports were created. Nothing in this February and March 2007 email exchange indicates that the correspondence was sent to Laura Meyers or Emily Stevens.

Emil and Robin Meyers sent a letter to the Trustee dated July 15, 2008, detailing allegations of the Trustee's mismanagement for which they requested $128,410.88 from the Trustee and $750,000 in restitution payments. Nothing in the letter indicates it was sent to Laura Meyers or Emily Stevens. The Trustee sent a reply letter, dated October 10, 2008. The reply letter was addressed *only* to Emil and Robin Meyers. In the May 22, 2014 motion for summary judgment, the Trustee specifically cited this letter as evidence that it sent the beneficiaries a report sufficient to trigger the one-year statute of limitations. The letter provides in part:

> Based on our careful review of your packet of information, it appears that *the majority of issues you raise have been resolved*, leaving four main items to be addressed: (1) whether [the Trustee] recovered two months of lease short payments made in July and August 2000 totaling $1,248.00; (2) whether [the Trustee] properly and timely addressed the roof leaks that arose in 1998; (3) whether [the Trustee] conducted adequate inspections of the warehouses; and (4) reimbursement of travel and legal expenses.
>
> *With respect to the lease short payments*, our records indicate that in October 2000, Doug McKamey sent a letter to the lessee advising of the short payments and directing the lessee to remit those amounts to [the Trustee]. While Mr.

McKamey believes that the lessee would have remitted the short payments in response to his letter, we have been unable to confirm from our records that those payments were actually received and credited to the account. Consequently, [*the Trustee*] *is willing, as a good-faith gesture, to pay Ms. Meyers the $1,248.00 at issue, and a check in that amount is enclosed herewith.*

With respect to the roof leaks, our records indicate that [*the Trustee*] *was very diligent in pursuing repairs of the roof.* The [Trustee] demanded that C.M. Henley Company, which had initially repaired the roof in 1995, undertake the additional work necessary to repair the leaks. Mr. McKamey made numerous telephone calls to Mark Henley, owner of C.M. Henley Company, and obtained Mr. Henley's assurances that the problems would be resolved. When Mr. Henley failed to adequately address the issue, [the Trustee] obtained the assistance of outside counsel, as you and Ms. Meyers were aware, to secure performance from Mr. Henley. Due to the efforts of [the Trustee] and our outside counsel, which included arranging for inspections of the roof, frequent contacts and correspondence with Mr. Henley's company and his counsel, and the initiation of a lawsuit against C.M. Henley Company, [the Trustee] was able to secure the repair work needed from Mr. Henley, who performed them at no additional cost to the Trust. Based on quotes obtained from other roof repair companies, it would have cost tens of thousands of dollars to retain another company to perform the repairs, costs which the Trust may or may not have been able to recover in litigation against C.M. Henley Company, and if so, only with substantial legal expense. *By aggressively pursuing Mr. Henley to perform the repair work, and obtaining a $4,000 settlement (with your approval) in addition to the work performed, we were able to greatly minimize any expense to the trust.*

*With respect to inspections of the warehouse, our records show that* [*the Trustee*] *did, indeed, undertake annual inspections of the warehouses and fully met its obligations in this regard.* It was not until Distribution Services [a warehouse tenant] and its affiliates filed Chapter 11 and began vacating the warehouses, that certain potential repair issues become [sic] apparent. Because the lessees were

already in bankruptcy, Trust counsel advised that we would be unable to recover the costs of repairs even if it was determined that any damage was beyond ordinary wear and tear and that Distribution Services was responsible for any repairs. Please note that Kent Bewley had never noted or mentioned a need for repair prior to the March 2005 inspection. We would likewise note that you and your wife had been present for at least one inspection in 2001, yet made no mention of any extensive damage that necessitated repair.

As for the travel and legal expenses for which you seek reimbursement, we see no legal or factual basis for such a claim. [The Trustee] would, under no circumstances, have liability for the expenses you incurred as a result of your decision to make trips to the warehouses. Likewise, any legal or travel costs you incurred relating to the termination of the trust would not be the responsibility of [the Trustee].

We believe that we have adequately addressed the issues outlined in your letter. *We further believe that* [*the Trustee*] *met its obligations with respect to the Trust* and, therefore, that the $1,248 enclosed with this letter appropriately compensates the beneficiaries with respect to these matters.

(Emphasis added.)

The Trustee now argues that "[t]he letter adequately disclosed facts indicating the existence of a potential claim for breach of trust . . . ." Contrary to the Trustee's description of the letter made during the current litigation, the letter easily could be seen as conveying, instead, point-by-point assurances to the beneficiaries that no breach of trust occurred. A letter from a trustee assuring the recipient that the Trustee "has met its obligations with respect to the trust" is unconvincing as "a report" that "adequately discloses facts indicating the existence of a potential claim for breach of trust" against the Trustee. Further, when the letter was sent on October 10, 2008, neither recipient – Robin or Emil Meyers – met the definition of a beneficiary: "a person that: (A) [h]as a present or future beneficial interest in a trust, vested or contingent; or (B) [i]n a capacity other than that of trustee, holds a power of appointment over trust property." Tenn. Code Ann. § 35-15-103(3). The Trust was terminated May 16, 2007, and its property had been distributed by November 2007. Robin Meyers was no longer a Trust beneficiary in 2008.

The Trustee raised the issue that the beneficiaries' claim was time-barred in its motion for summary judgment. When reviewing a motion for summary judgment, "[w]e must view the evidence in the light most favorable to the nonmoving party and must draw

23

all reasonable inferences in the nonmoving party's favor." ***Thomas v. Carpenter***, No. M2005-00993-COA-R9-CV, 2005 WL 1536218, at \*2 (Tenn. Ct. App., filed June 29, 2005) (citing ***Robinson v. Omer***, 952 S.W.2d 423, 426 (Tenn. 1997)). "[I]f there is a dispute as to any material fact or *any doubt as to the conclusions to be drawn from that fact, the motion must be denied.*" ***Garner***, 2015 WL 6445601, at \*4 (Tenn. Ct. App. M.S., filed Oct. 23, 2015) (internal quotation marks removed and emphasis added). Doubts exist about the conclusions that can be drawn from the correspondence sent to Robin Meyers and whether it adequately disclosed facts that indicated a potential claim for breach of trust. These are factual issues for the trier of fact.

The June 17, 2005 email and the October 10, 2008 letter – specifically described as "reports" by the Trustee in its brief – were not sent to two of the three individuals the Trustee identified as beneficiaries in its statement of undisputed material facts. A trustee owes qualified beneficiaries a duty to report. Tenn. Code Ann. § 35-15-813. In determining whether a trustee has met the reporting requirement, "[t]he key factor is . . . whether the report provides the beneficiaries with the information necessary to protect their interests." Tenn. Code Ann. § 35-15-813, cmt. Laura Meyers and Emily Stevens appear to have been left out of correspondence from the Trustee that conveyed information about the Trust property, though they were included in correspondence regarding diversification of the Trust assets and the Trustee's notice of resignation. The Trustee has not established that beneficiaries Laura Meyers and Emily Stevens were sent a report sufficient to trigger the one-year statute of limitations.

While Robin Meyers, a beneficiary, was involved in an exchange of communications with the Trustee, we do not find that the messages *to her* made out the requisite facts indicating she had a potential claim against the Trustee. There are genuine issues of material fact even as to her.

For the reasons stated above, the Trustee failed to meet its burden on summary judgment to establish that the beneficiaries' claim is barred by the one-year statute of limitations in Tenn. Code Ann. § 35-15-1005(a). There is much material in this record for the trier of fact to "chew on." This is not the kind of case with clear facts and undisputed conclusions to be drawn from those facts. It certainly does not warrant judgment in a summary fashion.

## VII.

The question we certified for appeal was not limited to whether the beneficiaries' claim was time-barred under Tenn. Code Ann. § 35-15-1005(a). Therefore, we next must consider whether the suit was untimely under subsection (c) of the same statute. To aid the reader, we will reprint subsection (c) of the statute:

24

> If subsection (a) does not apply, a judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within three (3) years after the first to occur of:
>
> (1) The removal, resignation, or death of the trustee;
>
> (2) The termination of the beneficiary's interest in the trust; or
>
> (3) The termination of the trust.

Tenn. Code Ann. § 35-15-1005(c). Additionally, the official Advisory Commission comment to Tenn. Code Ann. § 35-15-1005 provides that

> [w]hile the three-year limitations period will normally begin to run on termination of the trust, it can also begin earlier. *If a trustee leaves office prior to the termination of the trust, the limitations period for actions against that particular trustee begins to run on the date the trustee leaves office.* If a beneficiary receives a final distribution prior to the date the trust terminates, the limitations period for actions by that particular beneficiary begins to run on the date of final distribution.

(Emphasis added.)

The Trustee argues that it resigned effective December 31, 2005, triggering the three-year statute of limitations under subsection (c)(1) and barring the complaint filed on May 13, 2010. The Trustee maintains on appeal that it "was compelled to continue to administer the Trust pursuant to the Trustee's residual power" under Tenn. Code Ann. § 35-15-707 (2007). Conversely, the beneficiaries argue that, of the events listed in subsection (c), the Trust's termination on May 16, 2007, was the first to occur. They argue that after the Trustee gave notice of its resignation, it continued to act as the Trustee until the Trust was divested of its assets in November 2007. The trial court found "a question of fact regarding whether the resignation was effective December 31, 2005."

Under the Trust Code, "[a] trustee may resign . . . [u]pon at least thirty (30) days' notice to the qualified beneficiaries, the settlor, if living, and all co-trustees. . . ." Tenn. Code Ann. § 35-15-705(a)(1) (2007). The Trust Code does not require that a trustee receive the permission of the qualified beneficiaries in order to resign. Tenn. Code Ann. § 35-15-705 cmt. However, if there is no co-trustee, "until the trust property is delivered to a successor trustee or other person entitled to it, *a trustee who has resigned . . . has the duties of a trustee and the powers necessary to protect the trust property*." Tenn. Code

25

Ann. § 35-15-707(a) (emphasis added). In other words, even a trustee who has submitted a notice of resignation and named an effective date for the intended resignation may not leave office until the trust property has been delivered to a successor trustee or other person entitled to it. Under subsection (c), the three-year period in which a beneficiary may bring a proceeding against a trustee who left office prior to the termination of a trust begins to run the date that trustee leaves office. Tenn. Code Ann. § 35-15-1005 cmt.

Despite the Trustee's "notice of resignation," the Trustee did not leave office until the Trust had been terminated and the Trust property had been distributed. There was no co-trustee in this case. No successor trustee was ever appointed. The beneficiaries argue that, until the fall of 2007, the Bank still received a monthly fee for its work as trustee. Through the fall of 2007, the Trustee also communicated with the beneficiaries about the Trust and took various actions on behalf of the Trust, including deeding and distributing Trust property. The record includes evidence of extensive communication between representatives of the Bank and Robin Meyers concerning winding-up tasks of the Trust in 2006 and 2007. Additionally, special warranty deeds conveying the Trust property were executed in July and September 2007. Both deeds identify the Bank as "[The] Trustee of the [Trust]" in both the body of the instruments and the signature blocks. (Capitalization in original omitted). The Trustee did not leave office on the date it identified as its effective resignation date. Instead, the Trustee continued to administer the Trust well after the date of its intended resignation.

There is evidence in the record that suggests the Trustee did not leave office before the termination of the Trust. If this be the case, Tenn. Code Ann. § 35-15-1005(c)(1) would not apply. Under the evidence in the record, the beneficiaries' interest in trust property did not terminate prior to the termination of the trust, meaning subsection (c)(2) also would not apply. Under this record, of the events listed in subsection (c), the termination of the Trust on May 16, 2007, would be the first to occur. The beneficiaries filed suit against the Trustee within three years of that date. Therefore, the Trustee is not entitled to summary judgment on the ground that the beneficiaries' claim was time-barred by the three-year statute of limitations in Tenn. Code Ann. § 35-15-1005(c).

## VIII.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, First Tennessee National Bank, N.A. This case is remanded for further proceedings consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE